785 A.2d 708

**Rita UNDERWOOD–GARY**

v.

**George J. MATHEWS, et al.**

**No. 107, Sept. Term, 2000.**

Court of Appeals of Maryland.

Nov. 28, 2001.

Leo William Dunn, Jr. (Leo William Dunn, Jr., P.A., on brief) of Chester, MD, for petitioner.

Timothy L. Mullin, Jr. (Donna P. Sturtz of Miles & Stockbridge P.C., on brief) of Baltimore, Judith C. Ensor (Whiteford, Taylor & Preston, L.L.P., on brief), of Towson, for respondents.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

RAKER, J.

The issue in this case is whether a plaintiff who enters into an agreement and has marked as satisfied a judgment against one tortfeasor is barred from maintaining a second action against two other alleged tortfeasors for the same harm. The Court of Special Appeals held, *inter alia*, in *Mathews v. Underwood–Gary*, 133 Md.App. 570, 758 A.2d 1019 (2000), that petitioner could not maintain the second action on the ground that it was barred by the one satisfaction rule. We agree and shall affirm.

■ This appeal arises out of a medical malpractice action filed in the Circuit Court for Prince George's County, in which Rita Underwood–Gary, petitioner, alleged that George J. Mathews, M.D. and Shaheer Yousaf, M.D., respondents, performed unnecessary surgery upon her. Approximately one

week after entry of satisfaction of a money judgment[1] in a 1992 lawsuit stemming from an automobile accident in the Circuit Court for Charles County (the "Thompson litigation"), petitioner filed this malpractice action in the Circuit Court for Prince George's County. In this case, we shall hold that the satisfaction[2] of the Thompson litigation judgment precluded petitioner from pursuing claims against George J. Mathews, M.D. and Shaheer Yousaf, M.D., her treating physicians, in the subsequent medical malpractice action.

On July 10, 1991, Rita Underwood–Gary and Ms. Marie Thompson were involved in an automobile accident in Charles County, Maryland. Following the accident, petitioner developed severe pain in her lower back and, in August 1991, she began receiving treatment from Dr. Shaheer Yousaf, an orthopedic surgeon. Dr. Yousaf treated petitioner over a period of approximately seven months. The treatment did not relieve petitioner's back pain, and Dr. Yousaf concluded that petitioner suffered from an injury to the soft tissue in her back and an injury to the facet joint of the lower back. Dr. Yousaf indicated that surgery might be necessary to relieve petitioner's pain. He referred her, for a second opinion, to Dr. George J. Mathews, a neurosurgeon. After Dr. Mathews met with petitioner and reviewed her previous medical treatment, he concurred with Dr. Yousaf's diagnosis of petitioner's injuries and recommended back surgery. On May 20, 1992, Drs. Yousaf and Mathews, along with Dr. Dadgar, a thoracic and vascular surgeon, performed back surgery on petitioner.

---

**1.** Maryland Rule 2–626(a) provides as follows:

"Upon being paid all amounts due on a money judgment, the judgment creditor shall furnish to the judgment debtor and file with the clerk a written statement that the judgment has been satisfied. Upon the filing of the statement the clerk shall enter the judgment satisfied."

**2.** A satisfaction of a judgment is " 'an acceptance of full compensation for the injury.' " *Morgan v. Cohen*, 309 Md. 304, 312, 523 A.2d 1003, 1007 (1987) (quoting Prosser, *Joint Torts and Several Liability*, 25 Cal. L.Rev. 413, 421–22 (1937)).

On July 22, 1992, petitioner filed a complaint sounding in negligence in the Circuit Court for Charles County against Ms. Thompson, the driver of the vehicle that collided with her on July 10, 1991, seeking recovery for the injuries allegedly suffered as a result of the automobile accident. In her complaint, petitioner alleged that Ms. Thompson negligently operated her vehicle and caused the collision. Petitioner further alleged that, as a result of the accident,

> "[She had] sustained serious, painful and permanent injuries in and about her entire body, including but not limited to her head, back, hip, neck and other parts of her body; that the Plaintiff, Rita Lee Underwood, has suffered and will in the future suffer great physical pain, mental anguish and nervous shock; that the Plaintiff, Rita Lee Underwood, has in the past and will in the future be required to expend large sums of money for hospital, rehabilitation, medical and nursing care, treatment and related items."

Petitioner also claimed damages for loss of enjoyment of life, loss of income, and loss of earning power. Petitioner requested the Charles County jury to award her damages for her back surgery. Significantly, during pre-trial discovery, petitioner was placed on notice that Thompson's defense included the contention that the back surgery was unnecessary. At the latest, petitioner was on notice of the unnecessary surgery defense as of October 18, 1993, when she took the *de bene esse* deposition of Dr. Kevin Hanley, a defense witness. Respondent contends that Ms. Underwood–Gary knew of the unnecessary surgery defense long before this date, through Ms. Thompson's Answer to the Complaint, discovery responses, and discovery depositions, all of which predated Dr. Hanley's deposition by some time.

On October 27, 1993, the Thompson case proceeded to trial before a jury. Petitioner testified as to her entire course of therapy and treatment following the automobile accident. She offered into evidence all of the medical bills related to her treatment by Drs. Yousaf and Mathews, including the bills for the surgery and the hospital stay. She claimed a total of $38,195.28 in medical expenses, including all of the medical

expenses related to the back surgery, as well as $250,000.00 for pain and suffering. Additionally, petitioner testified to the pain and physical limitations she experienced both before and after the surgery. She presented evidence that, as a result of the accident, and after the surgery, she was 30 percent permanently disabled. She described her three month recovery at a relative's house, having to miss two to three weeks of work, and her inability to sit for long periods of time. Petitioner testified to the financial strain that the injury placed on her marriage, the constant pain that she felt in her lower back, and that she could no longer participate in activities that she used to enjoy, such as bowling and walking.

During her case-in-chief in the Thompson litigation, petitioner called Drs. Yousaf and Mathews as witnesses to testify on her behalf. In addition to eliciting testimony about the nature of the surgery, petitioner's counsel inquired of Dr. Yousaf as to the necessity of the surgery:

"Q: Now, Doctor, I want to show you, Doctor, let me ask you this, do you have an opinion based on medical probability, the operation you performed in and assisted in *was necessary to have in her case?*

A: Based on indications."

Petitioner also called Dr. Mathews, who testified that petitioner's back surgery was related to the Thompson accident.[3] Consistent with the pre-trial discovery, Thompson presented evidence in defense that petitioner suffered from a soft tissue injury, not a facet joint injury, and that the back surgery performed by Drs. Mathews and Yousaf was not necessary.

The jury found Ms. Thompson negligent, that petitioner had suffered injuries as a result of the accident, and awarded petitioner damages in the amount of $8,337.00 for medical expenses, $750.00 for lost wages, and $0 for pain and suffer-

---

**3.** In closing argument to the jury in the Thompson litigation, petitioner's counsel argued that the surgery was called for. He argued: "You didn't hear any testimony saying that he shouldn't have done that. It was called for and was an effort to relieve this woman."

ing.[4]  Judgment was entered in favor of petitioner for $9,087.00.  Petitioner noted an appeal to the Court of Special Appeals, and while the appeal was pending, the parties settled the case for the policy limit of $20,000.00.  The appeal was dismissed and an order of satisfaction was entered in the Circuit Court on May 15, 1993.[5]

Approximately one week after the court entered the order of satisfaction in the Thompson litigation, petitioner filed suit against Drs. Yousaf and Mathews, alleging in her complaint that the doctors were negligent in that petitioner did not have any of the accepted indications for surgery and that the lumbar fusion was unnecessary.  Petitioner sought recovery for her medical bills, lost wages, and pain and suffering.

Prior to trial, Drs. Yousaf and Mathews filed motions for summary judgment, arguing that petitioner's action was barred by the doctrines of judicial estoppel, collateral estoppel, and satisfaction.  The Circuit Court for Prince George's County denied the motions.  At trial, petitioner offered evidence that respondents failed to meet the standard of care with regard to the decision to operate and that the surgery was unnecessary.  Respondents defended on the ground that the surgery was necessary.  The trial court instructed the jury that the "only issue in the case is whether the surgical treatment was negligent or not."  Petitioner's counsel argued to the jury that petitioner's pain "is caused by a totally completely unnecessary operation and that it didn't have to happen, but it did."

The jury returned a verdict in petitioner's favor in the amount of $437,073.69.  The Circuit Court denied respondents'

---

4.  The verdict sheet presented to the jury did not include a question or questions requiring it to specify whether it was persuaded that Petitioner's back surgery was necessary or that Petitioner's claimed injuries to her vertebral facets, as opposed to the soft tissue injuries, were caused by the collision with Thompson's vehicle.

5.  The record in this case contains no information concerning any release that may have been executed contemporaneously with the dismissal of the appeal and the entry of the order of satisfaction in the Thompson litigation.

post-trial motions and respondents then filed a timely appeal to the Court of Special Appeals. That court reversed the judgment on the grounds that the claim was barred by the doctrine of judicial estoppel and the one satisfaction rule. *See Mathews v. Underwood–Gary*, 133 Md.App. 570, 758 A.2d 1019 (2000). This Court granted Underwood–Gary's petition for writ of certiorari. *Underwood–Gary v. Mathews*, 362 Md. 187, 763 A.2d 734 (2000).

The Court of Special Appeals held that the Circuit Court erred in rejecting the doctors' argument that petitioner's claim for all her damages had been satisfied in the Thompson litigation. *See* 133 Md.App. at 581, 758 A.2d at 1024. We agree. We shall affirm the judgment of the Court of Special Appeals on the ground that petitioner's claim has been satisfied by the settlement in the Thompson litigation and shall not reach the court's alternative holding that the action is barred by the doctrine of judicial estoppel.[6]

██ We begin with the general principle that a plaintiff is entitled to but one compensation for her loss and that satisfaction of her claim prevents further action against another for the same damages. *See Welsh v. Gerber Products, Inc.*, 315 Md. 510, 524, 555 A.2d 486, 493 (1989); *Morgan v. Cohen*, 309 Md. 304, 312, 523 A.2d 1003, 1006 (1987); *see also Knutsen v. Brown*, 96 N.J.Super. 229, 232 A.2d 833, 836 (1967); *Turner v. Pickens*, 711 So.2d 891, 893 (Miss.1998). This rule is equitable in nature and the purpose of the rule is to prevent double recovery and, thus, unjust enrichment. *See Morgan*, 309 Md. at 312, 523 A.2d at 1006; *Lanasa v. Beggs*, 159 Md. 311, 320, 151 A. 21, 25 (1930) (noting that "[i]t is neither just nor lawful

---

6. Judicial estoppel has been defined as a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action. *See WinMark Ltd. P'ship v. Miles & Stockbridge*, 345 Md. 614, 693 A.2d 824 (1997). Petitioner argues before this Court that at no time did she attempt to mislead the court in any manner, and, in fact, no such issue has ever been raised in this case. Inasmuch as we decide this case on the basis of the one satisfaction rule, we do not reach the issue of judicial estoppel.

that there should be more than one satisfaction for the same injury, whether that injury be done by one or more."), *rev'd on other grounds, Morgan,* 309 Md. 304, 523 A.2d 1003; *Sacchetti v. Springer,* 303 Mass. 480, 22 N.E.2d 42 (1939); *Vaca v. Whitaker,* 86 N.M. 79, 519 P.2d 315, 319 (1974); *see also* Prosser and Keeton on Torts, § 48, at 330 (W. Page Keeton et al. eds., 5th ed.1984).

Petitioner argues that the Court of Special Appeals erred in holding that her claim was satisfied because the court ignored the fact that Ms. Thompson and Drs. Yousaf and Mathews were not joint tortfeasors and that there was a separate and distinct injury caused by the medical malpractice of the doctors. She argues that not only was the back surgery unnecessary, but that the surgery caused an additional 20 percent whole body permanent impairment rating. Petitioner concludes that because no party has asserted that respondents are joint tortfeasors, the doctrine of satisfaction should not apply to a non-party.

Petitioner ignores the well-settled principle of tort law that "a negligent actor is liable not only for harm that he directly causes but also for any additional harm resulting from normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner." *Morgan,* 309 Md. at 310, 523 A.2d at 1005–6. *See also* Restatement (Second) Of Torts § 457 cmt. c, illus. 1 (1965) (noting that original tortfeasor is liable for additional harm caused by a treating physician's improper diagnosis and unnecessary surgery). This rule is based on the premise that the negligent actor, by his or her conduct, has placed the plaintiff in a position of danger and should answer for the risks inherent in treatment and rendering aid. *See Morgan,* 309 Md. at 310, 523 A.2d at 1006. At the same time, when a physician negligently treats the plaintiff's injuries, the physician becomes liable to the plaintiff to the extent of the harm caused by the physician's negligence. *See id.* Thus, the physician's negligent treatment is a subsequent tort for which

both the doctor and the original tortfeasor are jointly liable. *See id.*

■ As we have indicated, a plaintiff is entitled to but one compensation for his or her loss, and full satisfaction of a plaintiff's claim prevents it from being further pursued. Thus, while multiple tortfeasors may be jointly and severally liable for the same injury, when payment of a judgment in full is made by one tortfeasor, "there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages...." PROSSER AND KEETON ON TORTS, § 48, at 331. Thus, double recovery for the same harm is not permissible. *See Morgan,* 309 Md. at 320, 523 A.2d at 1011.

■ While this principle appears straightforward, its application has led to confusion in the law. As we discussed in *Morgan,* much of the confusion resulted from the failure of courts to distinguish between jointly liable concurrent or successive tortfeasors on the one hand and true joint tortfeasors as they existed at common law, as well as the procedural rules that accompanied them.[7] *See Morgan,* 309 Md. at 311, 523 A.2d at 1006. Courts also failed to distinguish between the conceptually related yet distinct concepts of a release of a claim and satisfaction of claim.[8] *See id.* at 314–15, 523 A.2d at

---

7. In *Morgan,* we explained the common law understanding of the term "joint tortfeasor," stating:

   "The early 'joint tortfeasor' cases were limited to defendants who acted in concert, and the act of one was considered the act of all. Damages in those cases were entire; that is, each defendant was liable jointly and severally with the others for all of the damages. That is because there was but one wrong, though its commission was a joint enterprise, and therefore there was but a single cause of action. It is easy to see that a judgment against one tortfeasor would excuse the rest, because the judgment would extinguish the cause of action."

   *Morgan,* 309 Md. at 311, 523 A.2d at 1006.

   In this case, Ms. Thompson and Drs. Yousaf and Mathews are successive tortfeasors. Successive tortfeasors are "those whose negligent acts produce discrete, albeit overlapping or otherwise related, injuries." *Gen. Accident Ins. Co. of Am. v. Schoendorf,* 202 Wis.2d 98, 549 N.W.2d 429, 432 (1996).

8. We discussed the distinction between a release and a satisfaction in *Trieschman v. Eaton,* 224 Md. 111, 166 A.2d 892 (1961). We stated:

1008. In *Morgan,* we clarified these distinctions and over-ruled our previous case law that held that a release of the original wrongdoer as a matter of law released a negligently treating physician. *See id.* at 320, 523 A.2d at 1011 (overruling *Lanasa v. Beggs,* 159 Md. 311, 151 A. 21 (1930), and inconsistent portions of *Cox v. Md. Elec. Rys. Co.,* 126 Md. 300, 95 A. 43 (1915)). *Morgan* went on to hold that the effect of a release on a subsequent action against a concurrent or successive tortfeasor is a question of fact to be determined by the language in the release itself, not as a matter of law. *See id.* at 316, 523 A.2d at 1008–09. Significantly, we extended this rationale to determining the effect of a consent judgment and a subsequent order of satisfaction.[9] In so doing, we stated:

> "There is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration. * * * Most of the courts have continued to hold that a release to one of two concurrent tortfeasors is a complete surrender of any cause of action against the other, without regard to the sufficiency of the compensation actually received * * *. This result has been justly condemned. * * * Historically, and logically, it has no justification, since causes of action against mere concurrent tortfeasors not acting in concert have always been separate * * * and a surrender of one therefore should not discharge the other, except to the extent that there has been full compensation. * * * The fear of double recovery is meaningless, since the amount paid under the release must be credited to the second tortfeasor in any case."
>
> *Id.* at 116–17 n. 4, 166 A.2d at 895 n. 4 (quoting WILLIAM PROSSER, TORTS § 46, at 243–44 (2d ed.1955)) (citations omitted).

9. The present case differs from *Morgan* in an important respect. Unlike the satisfied consent judgment in *Morgan,* the satisfied judgment in the Thompson litigation followed a full trial on the merits. As such, this case presents collateral estoppel issues not present in *Morgan.* Petitioner potentially is estopped from relitigating issues, including the value of the alleged damages, fully litigated in the Thompson litigation. Commentary to the Restatement of Judgments explains this preclusive effect:

> *"Amount of loss adjudicated.* .... The adjudication of the amount of the loss also has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's

"If releases given under the circumstances of these cases do not, as a matter of law, bar action against one in Dr. Cohen's position, it follows that the satisfaction of a judgment against Jones, the original tortfeasor, in an action to which Dr. Cohen was not a party, should have no greater effect. The policy implicated here is that against double

being precluded from relitigating the damages question. Therefore, when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforceable claim against any other obligor who is responsible for the same loss."

RESTATEMENT (SECOND) OF JUDGMENTS § 50 cmt. d (1982).

In *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 555 A.2d 486 (1989), in response to a question certified to this Court by the United States Court of Appeals for the Fourth Circuit, this Court elucidated the distinction between agreements of settlement or consent judgments on the one hand and judgments entered to embody the result of an adjudication on the merits after litigation on the other. In *Welsh*, an automobile collision case, an action was brought against the driver, Voight, to recover damages for personal injuries sustained by an infant while riding in an infant car seat. The suit was settled and a judgment for the amount of the settlement was entered to protect Voight against the risk of additional litigation when the infant reached the age of maturity. Thereafter, a second action was brought on behalf of the same infant plaintiff against the manufacturer of the car seat the infant was riding in at the time of the collision. We stated:

"When an action for damages proceeds to trial and a judgment is entered on the verdict, that judgment represents a final determination of the plaintiff's claim for those damages. It is entirely appropriate to bind the plaintiff to that assessment of damages, directly and collaterally, even though the determination may be less than the plaintiff believes is fair, or may be thought to have been the result of jury compromise. If there is error in the award, relief must be sought by the appropriate post-trial motion. Once final, the judgment is properly given preclusive effect as to the issues actually litigated. But these principles do not necessarily apply to a consent judgment."

*Id.* at 523, 555 A.2d at 492. We "reject[ed] as unrealistic the notion that every consent judgment necessarily embodies actual litigation of the issue of damages." *Id.* at 522, 555 A.2d at 492. Under the circumstances of the case, we noted that the consent judgment was no bar to the proceedings against Gerber. *Id.* at 525, 555 A.2d at 493.

Following *Welsh*, the previously quoted language from *Morgan* should not be read to apply to judgments entered to adjudicate the merits of a litigated controversy. Rather, to determine the scope of a satisfied award of damages from a previous trial, a court must examine which issues and damages were presented in the first trial and, thus, are precluded from being relitigated in the second.

recovery for the same harm, and it underlies the decisions in cases like *Grantham*, 251 Md. 28, 246 A.2d 548, (1968) *Trieschman*, 224 Md. 111, 166 A.2d 892 (1961) *Lanasa*, 159 Md. 311, 151 A. 21 and *Cox. See also Huff v. Harbaugh*, 49 Md.App. 661, 670, 435 A.2d 108, 113 (1981). But the policy against double recovery does not apply when a judgment against the original tortfeasor for the original tort only has been satisfied, at least when the subsequent tortfeasor has not been joined in that suit. *See* Restatement (Second) of Judgments § 50 (1982). Like the question of intent with respect to the ambiguous releases, we are presented with a question of fact: Did the satisfied judgment include damages for both torts, or just the original tort? If the judgment in fact encompassed the former, Hovermill's claim against Dr. Cohen is barred because she has received full compensation for all her injuries; if it encompassed only the latter, her claim is not barred because she has been compensated only for the initial harm caused by Jones. This is a question of fact for the trial court."

309 Md. at 320–21, 523 A.2d at 1011.

█ It is ordinarily a question of fact whether the judgment in the first action encompassed *all* the injuries sustained by the plaintiff and included those alleged in the second action to be attributable to the doctor's alleged malpractice. As several of our sister states have recognized, however, although the scope of the satisfied judgment appears to be a question of fact, where, as here, the satisfaction of judgment follows a full trial of the merits, the issue is properly decided by the trial court on a motion for summary judgment. *See, e.g., Williams v. Woodman*, 424 So.2d 611, 614–15 (Ala.1982); *Cimino v. Alway*, 18 Ariz.App. 271, 501 P.2d 447, 453 (1972); *Knutsen v. Brown*, 96 N.J.Super. 229, 232 A.2d 833, 837 (1967); *Vaca v. Whitaker*, 86 N.M. 79, 519 P.2d 315, 320 (1974). As the court in *Knutsen* stated:

"That issue is not to be resolved, as the opinion below directs, by having the jury in the malpractice case evaluate all plaintiff's 'injuries and damages caused by all the tortfeasors' and comparing its evaluation with the $ 17,000 award-

ed by the jury in the automobile accident case. Such a comparison would be of no legal significance. The very nature of the process of admeasuring damages for personal injuries results in different juries reaching different results in evaluating the same injuries.

The injuries for which plaintiff seeks recovery in the malpractice case are those set forth in plaintiff's answers to interrogatories and in the pretrial order. The injuries for which plaintiff recovered damages in the automobile accident case are to be ascertained by the court from an examination of the pertinent portions of the record in that case. Such portions of the record may include plaintiff's answers to interrogatories, the pretrial order, the testimony, the charge of the court and the opening and closing statements of counsel.

The procedure to be followed is analogous to that used in deciding a plea of collateral estoppel in order to ascertain whether or not the issues sought to be presented in the instant case were presented at the former trial.

*    *    *    *    *    *

Since resolution of the posed question involves a study and comparison of the records in the two cases, the issue is to be tried by the court, not by the jury. The issue should be disposed of before trial of the merits of the malpractice action and may properly be decided upon a motion for summary judgment."

*Knutsen*, 232 A.2d at 836–37 (citations omitted).

We agree with the rationale set forth by the court in *Knutsen*. The preclusive effect of a satisfied judgment in a prior case is properly a question for the trial judge, not the jury.

A review of the provided portions of the trial record from the Thompson litigation demonstrates that the satisfied judgment in the Thompson litigation embodies an evaluation as to all of the harms that Petitioner later claimed in the malpractice action.[10] Petitioner sought to recover the same

---

**10.** The record in the present case fails to demonstrate conclusively that the jury in the Thompson litigation accepted or rejected the defendant's

post-surgery medical expenses that she presented to the jury in the Thompson litigation, including the Yousaf and Mathews medical bills, hospital bills, and other bills related to post-operative treatment. Petitioner also sought recovery for the same pain and suffering. In both cases, petitioner presented evidence of her fifty years life expectancy and requested the jury to compensate her for future pain and physical limitations that accompanied her back injury. Petitioner also argued to both juries that, after the surgery, she was approximately 30 percent permanently disabled. In the medical malpractice action, she presented evidence that approximately 20 percent of her permanent disability was attributable to the unnecessary surgery. The surgery may have contributed to the severity of petitioner's permanent disability, but, in the Thompson litigation, petitioner specifically sought to recover damages for the entire 30 percent disability. The jury evaluated her claim and awarded damages for the full 30 percent permanent disability. All of the harm claimed in the present case was included among the harms alleged to have resulted from the negligence in the Thompson litigation. The Thompson jury evaluated all of the claims and determined their worth in a verdict that was embodied in a judgment and marked satisfied. That judgment now precludes relitigating the value of the claims actually litigated. Therefore, all of Petitioner's claimed damages have been satisfied.

Chief Judge Murphy, writing for the Court of Special Appeals, observed that

> "[w]hile the amount of the auto negligence settlement may not have been 'satisfactory' to appellee, when the damage claim that she had been asserting was 'satisfied' as a matter

---

defense that the surgery was unnecessary. The jury verdict, and the subsequent policy limit settlement on appeal, do not permit, on this record, either the trial court in the present case or this Court to speculate as to how the Thompson jury parsed (if it did) the various claims made and damages sought by Petitioner. The only legal conclusion that may be reached on this record is that the jury awarded Petitioner $ 9,087 for all of the injuries and damages she claimed in that trial.

of law, she was thereafter prohibited from recovering more funds for the same injuries. Having filed an order of satisfaction in the (auto negligence) Charles County case, appellee could not thereafter assert an 'unnecessary surgery' claim in the Circuit Court for Prince George's County."

*Mathews v. Gary*, 133 Md.App. at 583, 758 A.2d at 1025. We agree. In the Thompson litigation, plaintiff presented evidence of all of her injuries arising from the accident and from the surgery. Petitioner has identified no new and independent injury that was not presented to the Thompson jury. As such, there are no damages that remain to be recovered in the medical malpractice action.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

Dissenting Opinion by BELL, C.J.

BELL, C.J., Dissenting.

A person who seeks advice and/or treatment from a professional is entitled to trust and rely upon that advice, care or treatment. Otherwise, that person will not have the trust and confidence so necessary for there to be the candor and openness that are likely to lead to adequate treatment or representation. This is just common sense. Thus, a rule that conditions the ability of a plaintiff in a tort action to recover for the negligence or malpractice of his or her expert witness, or treating physician, on that plaintiff's second-guessing, investigating, and, perhaps, suing, his or her witness or physician whenever the defense, buttressed by expert testimony of its own, challenges, as inadequate or just plain wrong, the plaintiff expert's opinion or treatment, not only undermines the trust and confidence critical to the plaintiff's relationship with his or her witness, but may hamper and impede the ability of the plaintiff to present his or her case. Moreover, such a rule may, in effect, insulate the plaintiff's expert witness from liability for his or her negligence. Because this is the proba-

ble effect of the majority's holding in this case, *see* 366 Md. 660, 675, 785 A.2d 708, 717, *supra,* I dissent.

The petitioner was injured in an automobile accident, as a result of which she sought and received treatment from the respondents, Dr. Yousaf and Dr. Mathews. Drs. Yousaf and Mathews diagnosed the petitioner's injuries as an injury to the soft tissue in her back *and* to the facet joint. They recommended and, when the petitioner agreed, they performed, surgery for the facet joint injury.

In her suit against Thompson, the other party to the accident in which she was involved and whose negligence she claimed caused her injuries (the automobile accident case or the Thompson litigation), the petitioner claimed $38,195.28 in medical expenses and $250,000 in pain and suffering. That action included a claim for damages resulting from her back surgery, a claim that the defendant disputed and, indeed, alleged was unnecessary. The Court of Special Appeals suggests that this latter allegation, or at least it and subsequent deposition testimony of defense witnesses, should have been sufficient notice to the petitioner that Dr. Yousaf and Dr. Mathews may have been liable to her for the unnecessary surgery and, therefore, should have been joined as defendants. *Mathews v. Gary,* 133 Md.App. 570, 580, 758 A.2d 1019, 1024 (2000).

At trial, testifying for the petitioner, both Dr. Yousaf and Dr. Mathews stated that the petitioner's back surgery was made necessary by the accident. As expected, and consistent with the defense raised, testimony was presented in the defense case that the petitioner suffered from only soft tissue injury as a result of the accident and the facet joint surgery was, in fact, not necessary. Although the jury returned a verdict in favor of the petitioner, it awarded her only $8,337.00 for medical expenses and $750.00 for lost wages. No award was made for pain and suffering. The verdict sheet submitted to the jury did not require the jury to decide and then specify whether the petitioner's back surgery was made necessary by the accident.

While the petitioner's appeal was pending, the parties settled for the defendant's policy limit, or $20,000.00. Consequently, the petitioner dismissed her appeal and entered an order of satisfaction in the Circuit Court.

Following the settlement, the petitioner brought an action against the respondents, alleging that the surgery they performed on her was unnecessary and, as a result, seeking recovery of her medical bills, lost wages and pain and suffering. She offered in support of her claim evidence, namely the deposition testimony of the defense expert who testified on the issue in the first trial that the respondents did not meet the standard of care in determining the necessity for the operation. Although the respondents defended on the merits, arguing as they did in the first trial, that they acted properly and out of necessity, they also maintained that the action was barred by, *inter alia*, satisfaction, that the petitioner had already received the one satisfaction to which she was entitled when she settled the Thompson litigation. The jury found for the petitioner and awarded her $437,073.69.

The Court of Special Appeals reversed, holding that both judicial estoppel, 133 Md.App. at 578–80, 758 A.2d at 1023–24, and the one satisfaction rule, *id.* at 580–83, 758 A.2d at 1024–25, barred the petitioner's recovery. With regard to the latter, it was important to the intermediate appellate court that the petitioner chose to pursue damages for the back surgery despite being on notice that the defense claimed the surgery was not necessary. *Id.* at 581, 758 A.2d at 1025. Proceeding from this premise, relying on *Morgan v. Cohen*, 309 Md. 304, 523 A.2d 1003, (1987), it asserted, "[i]n this case, no reasonable trier of fact could find that appellee did not seek compensation for her surgery from the Charles County jury," *id.* at 581, 758 A.2d at 1025, and then concluded, "the settlement of that case included 'satisfaction' for her bone fusion surgery." *Id.* After discussing a Pennsylvania intermediate appellate court case, *Brandt v. Eagle*, 412 Pa.Super. 171, 602 A.2d 1364 (1992), the court held:

"We are persuaded that the order of satisfaction filed in her Charles County case precluded appell[ee] from thereafter

obtaining an award of damages against appellants. While the amount of the auto negligence settlement may not have been 'satisfactory' to appellee, when the damage claim that she had been asserting was 'satisfied' as a matter of law, she was thereafter prohibited from recovering more funds for the same injuries. Having filed an order of satisfaction in the (auto negligence) Charles County case, appellee could not thereafter assert an 'unnecessary surgery' claim in the Circuit Court for Prince George's County."

*Id.* at 583, 758 A.2d at 1025–26.

The majority in this Court affirms the Court of Special Appeals on the one satisfaction rule. 366 Md. 660, 662, 785 A.2d 708, 709 (2001). Noting the equitable nature of the rule and that its purpose is to prevent double recovery, *id.* at 667, 785 A.2d at 712, the majority points out that it follows from "the well-settled principle of tort law that 'a negligent actor is liable not only for the harm that he directly causes but also for any additional harm resulting from the normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner.' " *Id.* at 668, 785 A.2d at 712–13 (quoting *Morgan v. Cohen, supra,* 309 Md. at 310, 523 A.2d at 1005). Thus, it concludes, a physician's negligent treatment of injuries caused by a prior tortfeasor is a subsequent tort for which both the doctor and that tortfeasor are liable. *Id.* at 670, 785 A.2d at 714.

The majority candidly admits that there is confusion in the law, attributing much of it to "the failure of courts to distinguish between jointly liable concurrent or successive tortfeasors on the one hand and true joint tortfeasors as they existed at common law, as well as the procedural rules that accompanied them." 366 Md. at 669, 785 A.2d at 713 (footnote omitted). After explaining the distinction, *see* 366 Md. at 667 n. 6, 785 A.2d at 712 n. 6, the majority acknowledges another source of the confusion: the failure of courts "to distinguish between the conceptually related yet distinct concepts of a release of a claim and satisfaction of a claim." *Id.* at 669, 785 A.2d at 713. Quoting *Trieschman v. Eaton,* 224 Md. 111, 116–

17 n.4, 166 A.2d 892, 895 n. 4 (1961), in turn quoting Prosser, Torts § 46 at 243–44 (2d ed.1955), the majority notes that "a satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration," *id.* at 669 n. 7, 785 A.2d at 713 n. 7, and concedes that the effect of the release or the satisfaction on a subsequent action against a concurrent or successive tortfeasor is a question of fact. *Id.* at 669, 785 A.2d at 713. It asserts, however, that "where ... the satisfaction of judgment follows a full trial of the merits, the issue is properly decided by the trial court on a motion for summary judgment ." *Id.* at 672, 785 A.2d at 715 (citing *Williams v. Woodman,* 424 So.2d 611, 615 (Ala.1982); *Cimino v. Alway,* 18 Ariz.App. 271, 501 P.2d 447, 453 (1972); *Knutsen v. Brown,* 96 N.J.Super. 229, 232 A.2d 833, 837 (1967); *Vaca v. Whitaker,* 86 N.M. 79, 519 P.2d 315, 320 (1974)).

With regard to this case, the majority holds that the judgment entered in the automobile accident case was satisfied and that this satisfaction encompassed all of the damages that the petitioner sought in that case. Because the damages sought by the petitioner in this case, and which she recovered in the earlier case, are the same damages and giving effect to the one satisfaction rule's policy against double recovery, the majority concludes, as a matter of law, presumably determining that no reasonable trier of fact could conclude otherwise, *see* Maryland Rule 2–501(e),[1] that the petitioner's action against the respondents was precluded. Its conclusion as to the identity of the damages in the two cases is based on its review of the trial record from the automobile accident case

---

1. Maryland Rule 2–501(e) provides, as relevant:
   "(e) Entry of Judgment. The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

and its analysis of the evidence offered by the petitioner in that case and the one under review.

I have no quarrel with the principle that a plaintiff is entitled to but one compensation for loss and that satisfaction of a claim to recover that loss precludes further action, even against another for the same loss. Our cases are quite clear on this point.[2] *See Welsh v. Gerber Products, Inc.*, 315 Md. 510, 523–24, 555 A.2d 486, 493 (1989); *Morgan v. Cohen, supra*, 309 Md. at 312, 523 A.2d. at 1006; *Lanasa v. Beggs*, 159 Md. 311, 319, 151 A. 21, 25 (1930). Nor do I have a problem with the use of equitable principles to prevent double recovery, and thus, unjust enrichment. And I agree generally with the majority's statement of the law: ordinarily a question of fact, when the judgment that is satisfied results from full adjudication, *i.e.*, trial on the merits, its effect may be decided as a matter of law in the context of summary judgment. My dispute with the majority is quite basic and specific; I simply do not agree that, under the facts of this case, the scope of the judgment in the automobile accident case should have been, or could have been, determined as a matter of law.

To be sure, the judgment in favor of the petitioner was entered after a trial on the merits, at which the petitioner

---

2. See Maryland Rule 2–641, which provides the procedures by which a judgment creditor can request the issuance of a writ of execution, makes the same point. It states:

"(a) Generally.—Upon the written request of a judgment creditor, the clerk of a court where the judgment was entered or is recorded shall issue a writ of execution directing the sheriff to levy upon property of the judgment debtor to satisfy a money judgment. The writ shall contain a notice advising the debtor that federal and state exemptions may be available and that there is a right to move for release of the property from the levy. The request shall be accompanied by instructions to the sheriff that shall specify (1) the judgment debtor's last known address, (2) the judgment and the amount owed under the judgment, (3) the property to be levied upon and its location, and (4) whether the sheriff is to leave the levied property where found, or to exclude others from access to it or use of it, or to remove it from the premises. The judgment creditor may file additional instructions as necessary and appropriate and deliver a copy to the sheriff. More than one writ may be issued on a judgment, but only one satisfaction of a judgment may be had."

sought, presenting evidence in support, damages for the surgery she maintained was necessitated by the negligence of the defendant in the automobile accident case she claimed caused her injuries. It also is true that an order of satisfaction as to the judgment was entered in that case. But I also find it significant that the entry of the order of satisfaction postdated the settlement agreement that the parties to the first case entered into while the appeal of the Circuit Court judgment was pending.[3] It is logical to assume that the dismissal of the appeal and the entry of satisfaction were terms of the settlement. It is, in addition, worthy of note that the evidence that the petitioner offered in support of her claim for compensation for her back surgery, was countered, and strenuously so, by evidence maintaining that the surgery was unnecessary. From the size of the verdict, given these conflicting arguments, it may fairly be argued that the jury may not have intended to, and, therefore, did not, compensate the petitioner for the surgery, accepting perhaps the defendant's argument that the surgery was unnecessary.

Thus, this issue is not appropriately decided as a matter of law, on summary judgment. It is not at all clear, in short, that the parties intended the petitioner's recovery to include compensation for the surgery performed by the respondents. There is, to the contrary, I submit, good reasons to suppose

---

**3.** The petitioner appealed to the Court of Special Appeals seeking a new trial on the issue of damages. Although the trial court had granted the petitioner's motion *in limine* to exclude evidence that her back surgery was unnecessary, an examination of the trial transcript confirms that the defendant did in fact offer such evidence over the petitioner's objection and that the petitioner only litigated the issue of the surgery's necessity to counter the defense. Additionally, the trial court refused the petitioner's request that the jury be specifically instructed, consistent with *Morgan v. Cohen, supra,* that the defendant was liable for the surgery, even if negligently performed, so long as the surgery was related to the accident. On appeal, the petitioner asserted that the trial court erred by allowing the defendant in the automobile case to present *any* evidence that the surgery was unnecessary, which was not, under *Morgan v. Cohen,* relevant to establishing the defendant's liability, and by failing to clearly instruct the jury that even if the respondents negligently performed surgery on the petitioner, the defendant nonetheless was liable for the damages related to the surgery.

that they did not. Certainly, there was no incentive on the part of the defendant in that case to carry the respondents' water, particularly since quite explicit, not just necessarily implicit, in the defense was the defendant's insistence that the respondents were negligent and that she should not be made to be responsible for that negligence, by paying for it. Nor would it have been in the petitioner's interest to agree to accept an amount she clearly viewed as insufficient recompense, in full satisfaction of all of her injuries, including those that she was advised by the respondents were the responsibility of the defendant in that case, but that, it appears, she had come to realize, as the defendant in the automobile accident case argued, really were the result of the respondents' negligence and when she apparently intended to pursue an action to recover for the damages that negligence caused.

This case is quite different from those on which the majority bases its decision. In each of those cases, the plaintiff accepted the jury's verdict; there were no appeal and subsequent settlement and, so far as the facts of those cases reveal, there was no dispute in the trial court as to the damages at issue on the appeal. In *Williams v. Woodman, supra,* the plaintiff having prevailed on the merits in an action involving the uninsured motorist provision in an insurance policy, withdrew from the court registry the moneys deposited by the insurance carrier. Similarly, in *Knutsen v. Brown, supra,* following a trial on the merits, judgment was entered for the plaintiffs, with which they were dissatisfied. Rather than appeal, however, they accepted the judgment after their motion to set the judgment aside as inadequate had been denied, and subsequently sued the treating physicians for malpractice.[4] The

---

4. The majority relies primarily on *Knutsen* for the proposition that the preclusive effect of a satisfied judgment may be determined as a matter of law. *See* 366 Md. at 673, 785 A.2d at 716 ("We agree with the rationale set forth by the court in *Knutsen.*"). But the majority seemingly fails to incorporate in its analysis other principles that were expressly considered by the *Knutsen* court and that also would have proven useful for the purposes of this appeal. For example, the *Knutsen* court likened the procedure to be followed when determining the preclusive effect of a satisfied judgment to "that used in deciding a

plaintiffs in *Vaca v. Whitaker, supra,* obtained a judgment, after a trial on the merits in Federal court, in which the jury was instructed "to return a verdict in damages for the plaintiffs in this case, to the full extent of any injury you find was sustained as a result of the accident. Also, any injury you find was a proximate result of any negligence you might find on the part of Dr. Whitaker [sic] in treating Alicia Vaca." Dr. Whitaker was the defendant in the subsequent litigation sounding in malpractice.

As the facts of this case reveal, this case really is not one decided on the merits for purposes of the application of the one satisfaction rule; rather, because it was settled before the appellate process concluded, it is more akin to a case in which a release is given or a judgment by consent is entered. In either event, as the majority recognizes, *see* 366 Md. at 669, 785 A.2d at 713 and n. 7; *see also Morgan v. Cohen, supra,* 309 Md. at 316, 523 A.2d at 1008–09; *Welsh v. Gerber Products, supra,* 315 Md. at 512, 555 A.2d at 486 (specifically as to consent judgments), the decision as to the preclusive effect of releases and consent judgments is not one to be resolved as a matter of law.

In *Welsh v. Gerber Products,* we addressed "the scope and reach of nonmutual, defensive, collateral estoppel following the

---

plea of collateral estoppel in order to ascertain whether or not the issues sought to be presented in the instant case were presented at the former trial." *See Knutsen,* 232 A.2d at 837. Here, as previously noted, although the trial court mistakenly allowed testimony on the necessity of the petitioner's back surgery, the trial court's granting of the petitioner's motion *in limine* to exclude such evidence is proof that the issue was not actually litigated in the automobile accident case. Again, the majority, as it should if in fact it finds the *Knutsen* rationale persuasive, fails to accord proper weight to these facts. The majority also completely overlooks the *Knutsen* court's admonishment that defendants have the burden of proving "that the judgment in the first action included plaintiff's entire lose." *Id.* (citations omitted). And the majority fails to consider that even in *Knutsen,* where the plaintiff did not appeal the trial court's denial of a motion to set aside as inadequate the verdict in the original case, the appellate court still granted the parties an opportunity to submit supplemental briefs to properly direct the court's attention to what the court specifically held to be the controlling issue. *Id.*

entry of a consent judgment in a joint tort-feasor situation."
315 Md. at 512, 555 A.2d at 486. We concluded that, to find
the answer to that question, a court had to "examine the
consent judgment to determine whether it represented a
determination of the complete equivalent of the plaintiff's
damages." *Id.* at 523, 555 A.2d at 492. We reasoned:

> "When an action for damages proceeds to trial and a
> judgment is entered on the verdict, that judgment repre-
> sents a final determination of the plaintiff's claim for those
> damages. It is entirely appropriate to bind the plaintiff to
> that assessment of damages, directly and collaterally, even
> though the determination may be less than the plaintiff
> believes is fair, or may be thought to have been a result of
> jury compromise. If there is error in the award, relief must
> be sought by the appropriate post-trial motion. Once final,
> the judgment is properly given preclusive effect as to the
> issues actually litigated. But these principles do not neces-
> sarily apply to a consent judgment. The issue of full
> damages generally has not been litigated when a consent
> judgment is entered and, as we have previously pointed out,
> the parties may or may not agree that the amount being
> entered by consent represents the plaintiff's full claim for
> damages."

*Id.* Thus, consideration of the actual intent of the parties is
necessary.

The cases on which the majority relies stand for the essen-
tially unremarkable proposition that the effect of a satisfaction
of judgment entered following a full trial of the merits,
because it "involves a study and comparison of the records in
the two cases," *Knutsen v. Brown, supra,* 232 A.2d at 837,
although still a question of fact, may be determined on sum-
mary judgment, rather than at a trial. *Id.* at 837; *see
Williams v. Woodman,* 424 So.2d at 612–13, 615; *Vaca v.
Whitaker, supra,* 519 P.2d at 319; *Cimino v. Alway, supra,*
501 P.2d at 449–50. A State's summary judgment principles
consequently may need to be applied. Such principles may
differ from State to State. *See Vaca v. Whitaker,* 519 P.2d at
319–20 (noting the difference between the summary judgment

rules applicable in New Mexico and those applied in Arizona in *Cimino v. Alway* ).

Thus, Maryland summary judgment practice is implicated. Recently, in *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 93–94, 756 A.2d 963, 972–73 (2000), we stated, on the subject:

> "Summary judgment practice in this state is governed by Maryland Rule 2–501. It states, in relevant part, '[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to summary judgment as a matter of law.' Rule 2–501(e). Summary judgment is not a substitute for trial. *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 205, 680 A.2d 1067, 1077 (1996). The function of the trial court at the summary judgment stage is to determine whether there is a dispute as to a material fact sufficient to require an issue to be tried. *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Foy v. Prudential Insurance Company of America et al.*, 316 Md. 418, 422, 559 A.2d 371, 373 (1989); *Coffey v. Derby Steel Company*, 291 Md. 241, 247, 434 A.2d 564, 568 (1981). Thus, an appellate court's review of the grant of summary judgment involves the determination whether a dispute of material fact exists, *Gross*, 332 Md. at 255, 630 A.2d at 1160; *Beatty v. Trailmaster Products*, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993), and 'whether the trial court was legally correct.' *Heat & Power Corporation v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990) (citations omitted). Evidentiary matters, credibility issues, and material facts which are in dispute cannot properly be disposed of by summary judgment. *See Pittman v. Atlantic Realty Co.*, 359 Md. 513, 536, 754 A.2d 1030, 1042 (2000) (recognizing that 'Maryland law ... has not viewed the function of summary judgment to be determining whether an issue is genuine based on credibility.'); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Merchants*

*Mtg. Co. v. Lubow,* 275 Md. 208, 217, 339 A.2d 664, 670 (1975).

Instead, a trial court reviewing a motion for summary judgment must ask whether there exists a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. *Brewer v. Mele,* 267 Md. 437, 442, 298 A.2d 156, 160 (1972). If the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking to the inferences that may be drawn in a light most favorable to the party against whom the motion is made and in the light least favorable to the movant. *Id.; Dietz v. Moore,* 277 Md. 1, 4–5, 351 A.2d 428, 431 (1976); *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 326, 389 A.2d 887, 904–905 (1978)."

We made these points most recently in *Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675–76, 766 A.2d 617, 624–25 (2001).

In concluding that the satisfied judgment in the Thompson litigation included all of the damages claimed in the present case, the majority relies on the fact that the petitioner sought to recover in the former case some of the same damages she sought to recover in this case, *i.e.,* the respondents' medical bills and the same pain and suffering. It also was persuaded by the identity of the evidence in both cases as to the petitioner's life expectancy and of her future pain and physical limitations accompanying the back injury. In addition, the majority asserts that she argued to both juries that she suffered a 30 percent permanent disability and that the jury awarded that level of disability in the automobile accident case.

Significantly, although acknowledging it in setting out the facts, the majority gives no weight to, and, indeed, does not mention in its discussion of the identity of issues, that the defendant in the automobile accident case disputed the necessity of the operation the respondents performed even as the respondents were insisting that the operation was necessary,

and that the petitioner only litigated the issue in response to the defense, all the while maintaining that the necessity of the operation was not relevant. Also not considered by the majority, or so it seems, is the significance of the award that the jury actually made. The jury awarded less than half of the medical expenses claimed—$8,337.00 of the $38,195.28 claimed, a sizable portion of which represented the respondents' bill for medical services. The jury also awarded no pain and suffering damages. *Knutsen* points out that one of the critical inquiries to be made when determining the effect of a satisfied judgment is "whether the amount paid actually constituted full compensation for the total loss suffered by plaintiff as the result of the negligence of the original tortfeasors and the negligence of the doctors." 232 A.2d at 836, citing *Daily v. Somberg*, 28 N.J. 372, 146 A.2d 676, 69 A.L.R.2d 1024 (1958). The majority also did not consider, although aware of the fact, having reported it in the facts, that the parties actually settled this case while the trial court judgment was pending appeal. These are matters that should have been considered and, had they been considered, would have demonstrated, as I have previously shown, *see* 366 Md. at 667, 785 A.2d at 712, *supra,* the existence of a genuine factual dispute, defeating summary judgment.[5] The test is, as I have pointed out and the majori-

---

**5.** The trial court refused to hold, as a matter of law, that the petitioner's action against the respondents was precluded. Denying the respondents' motion for summary judgment premised on the one satisfaction rule, it reasoned:

"I don't see anything in the law that precludes the plaintiff from pursuing a medical negligence action against the very doctors who treated her in the underlying tort case....

The whole reason that we have a separate scheme of litigation for health claims issues is that a patient must rely on her treating physicians in the automobile case in deciding what, if anything, to do about it. The mere fact that the auto tort feasor was found to be negligent, and therefore responsible for any consequential damages does not preclude her from later determining that the physicians who treated her were in fact negligent as well.

And I believe to rule otherwise would be to turn the health care arbitration system designed by the Legislature on its head, because it would require that the plaintiff pursue both claims simultaneously in the same lawsuit, and ... if she elects to do it in two separate actions,

ty, by citing *Morgan v. Cohen, supra,* recognizes, whether the damages sought in the second action were compensated in the first:

> "Like the question of intent with respect to the ambiguous releases, we are presented with a question of fact: Did the satisfied judgment include damages for both torts, or just the original tort?"

309 Md. at 321, 523 A.2d at 1011. Nevertheless, the majority seems to have adopted the intermediate appellate court's formulation of the issue: whether a "reasonable trier of fact could find that appellee did not seek compensation for her surgery from the Charles County jury." *Mathews v. Gary,* 133 Md.App. at 581, 758 A.2d at 1025.[6]

I am also concerned about the majority's suggestion, and the more explicit one by the Court of Special Appeals,[7] with regard to the importance of a defense argument, of which the plaintiff is put on notice, in determining the scope of the issues decided or the effect of a satisfied judgment on subsequent

---

she could very well end up with no recovery from the back surgery from either tort feasor, and that is not fair. Obviously, if it is necessary and the defendants here win, and if it was necessary, then the verdict in the other suit stands and there's no problem with it.

On the other hand, if in the other suit she elected to believe it was not necessary and therefore chose not to seek recovery from the original tort feasor for it, it is possible to end up with no recovery for the back surgery at all."

*See Mathews v. Gary,* 133 Md.App. at 578, 758 A.2d at 1023.

**6.** The Court of Special Appeals recognizes that the automobile case was settled, yet it concludes that that settlement included the satisfaction of the claim that the petitioner now makes against the respondents, thus treating the settlement as if it were the trial on the merits. In short, it, like the majority, gives the fact of a settlement between the initial parties no significance.

**7.** Discussing judicial estoppel, the Court of Special Appeals stated, referencing the defense that the petitioner's surgery was unnecessary: "appellee was required to consider a number of unpleasant choices. Those choices, however, have consequences."

*Mathews v. Gary,* 133 Md.App. at 580, 758 A.2d at 1024. One of those choices was mentioned by the trial court in ruling on the respondents' motion for summary—elect to pursue in the same action a claim for negligence and for malpractice.

litigation. Equity is a two-way street. My concern is that the application of the one satisfaction rule in the case *sub judice* leads not to full satisfaction of the petitioner's claim, but to non-satisfaction of that claim against a subsequent and distinct tortfeasor, upon whom the petitioner relied, as she had the right to do, and with whom the petitioner maintained a confidential and trusting relationship. The problem posed by the suggestion made by the intermediate appellate court and not repudiated by the majority, that a plaintiff must investigate, and perhaps pursue a claim against his or her experts or doctors whenever the charge is made that their advice and treatment is faulty, is that the plaintiff is forced to question "... a relationship built on trust and confidence [which] generally gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist," *Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. at 97–98, 756 A.2d. at 974– 7, when, ordinarily, "[t]he confiding party ... is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious." *Id.*[8] Surely, a difference in opinion between expert witnesses articulated in the answer to a complaint or deposition testimony given prior to trial, or even trial testimony, does not necessarily rise to the level of "something suspicious," which would cause a plaintiff to question the competency of those witnesses. Every difference of opinion does not lead to a finding of malpractice. Indeed, if a mere difference of opinion constitutes "notice" of not potential malpractice, but malpractice, plaintiffs will be hard pressed to get anyone, who may be charged in a malpractice action, to testify on their behalf.

---

**8.** Although *Frederick Rd.* involves when the statute of limitations is tolled in a legal malpractice suit, it is particularly insightful when looking at the confidential relationships between lawyers and clients and, analogously, doctor/patient relationships.