56 A.3d 383

Charles T. BRANNAN, Jr., et al.

v.

WALLACE & GALE ASBESTOS SETTLEMENT TRUST.

No. 2287, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Nov. 26, 2012.

Edward J. Lilly (Bruce McElhone, Jennifer L. Lilly, Law Office of Peter G. Angelos, on the brief) Baltimore, MD, for appellant.

Brian A. Zemil (Theodore F. Roberts, Mark D. Maneche, Alex Hortis, Venable, LLP, on the brief) Baltimore, MD, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH, PAUL A. HACKNER (Specially Assigned), JJ.

MEREDITH, J.

Appellants in this case are personal representatives of the estates of four decedents, each of whom pursued to final judgment claims against various parties in asbestos litigation.[1] The appellee is the Wallace & Gale Asbestos Settlement Trust ("the Trust"), which is the successor to Wallace & Gale ("W & G"), a Baltimore-based insulation contractor that installed asbestos-containing products at various locations in the Baltimore region, including at Bethlehem Steel facilities. The Circuit Court for Baltimore City entered summary judgment in favor of the appellee in this consolidated case in which the four appellants were seeking to hold the appellee liable for paying a portion of judgments previously entered in favor of appellants in earlier asbestos litigation. In 1984, W & G filed for Chapter 11 bankruptcy protection, and as a consequence, was not a party to the four asbestos cases at the time when the appellants obtained judgments against other parties.

*Appellants' previous judgments*

The four appellants (who will be identified herein as Brannan, McFadden, Nardone, and Jakubowski) tried asbestos cases to judgment between 1996 and 2001 as follows.

**Brannan**

Charles T. Brannan, Jr., was a former trolley driver who made daily stops at Bethlehem Steel's Sparrows Point plant. Brannan was diagnosed with mesothelioma on August 1, 1989, and died of that disease on January 7, 1990. His personal representative brought suit in the Circuit Court for Baltimore City against various entities involved in the provision, manufacture, and/or installation of asbestos-containing products, alleging secondary exposure through asbestos dust carried onto his trolley by Brannan's passengers. Some defendants

---

1. The four decedents are: Charles T. Brannan, Jr.; Gust McFadden; Aristide Nardone; and Theodore Jakubowski.

settled prior to trial, but on May 3, 1996, a jury returned a plaintiff's verdict in Brannan's case against Owens–Corning Fiberglas Co. in excess of two million dollars. Owens–Corning was successful on its cross-claims against Porter–Hayden Co. and Harbison–Walker Corp., although this Court, in an unreported opinion,[2] reversed on sufficiency of evidence grounds the jury's finding of liability against Harbison–Walker. Pursuant to the Uniform Contribution Among Joint Tortfeasors Act ("UCAJTA"), Owens–Corning and Porter Hayden were each accountable for $1,012,279. In December 1997, Brannan's estate settled with Owens–Corning for $802,798.73 in exchange for a release. For its part, Porter Hayden settled with Brannan's estate for $674,852.67, although no release appears in the joint record extract. Orders of satisfaction of judgment were not, however, filed.

**McFadden**

Gust McFadden worked for Bethlehem Steel as a steelworker from 1946 until his retirement in 1983. He died of mesothelioma on January 16, 1994. In McFadden's asbestos case, a plaintiff's verdict was rendered on May 3, 1996, in favor of McFadden against Owens–Corning in the amount of $5,091,184. Owens–Corning prevailed on its cross-claims against Porter Hayden and Harbison–Walker. Under the UCAJTA, the three joint tortfeasors in McFadden's case were each accountable for $1,697,061.33. Owens–Corning settled with McFadden's estate for $1,332,852.21 and was released. It appears that Porter Hayden and Harbison–Walker also settled in the McFadden case for less than their *pro rata* shares.

**Nardone**

Aristide Nardone was a steelworker at Sparrows Point who died of mesothelioma on March 25, 1998. His estate brought survival, wrongful death, and consortium claims, and prevailed against one direct defendant—ACandS—and a jury returned a

---

**2.** *Porter Hayden Company, et al. v. Charles E. Brannan, et al.,* No. 190, September Term, 1997.

verdict in excess of four million dollars. Ten entities [3] were found liable on the third party claims asserted by ACandS. The trial judge entered judgment against ACandS on November 1, 2000, for $342,959.33.

## Jakubowski

Theodore Jakubowski was a Sparrows Point steelworker who died of mesothelioma on November 22, 1999. His estate brought suit on September 28, 2001, and a jury returned a verdict against two direct defendants, John Crane, Inc., and Durabla Manufacturing Co. Judgments were entered against each of these defendants in the amount of $1,304,071. There were also seven cross-defendants found liable: ACandS, A.W. Chesterton, Garlock, Owens–Illinois, Porter–Hayden Co., Quigley, and Westinghouse. Six of those settled for various amounts less than their *pro rata* share, and the seventh, ACandS, settled for $560,000, which was more than its *pro rata* share.

### *Appellants' Claims Against the Trust*

After the Trust emerged from bankruptcy in 2006, appellants each moved to have their then-dormant cases removed from the inactive docket so that they could pursue damages from the Trust. Discovery commenced, but then the Trust filed a motion for summary judgment, arguing that appellants failed to state a claim upon which relief could be granted due to the operation of the final judgment rule. In the appellee's motion, the Trust argued that the appellants' "claims against the Trust are an impermissible effort to reopen final judgments."

According to the Trust, the situation was analogous to a case in which a person had been injured in a motor vehicle accident in which two drivers were alleged to have been at fault. Under such circumstances, the Trust argued, the plain-

---

3. Armstrong, National Gypsum, Fibreboard, Hopeman Bros., Owens–Corning, Owens–Illinois, Porter Hayden Co., Rapid–American Corp., Selby–Battersby, and Babcock & Wilcox.

tiff could sue both drivers, obtain a judgment, and collect the judgment from the two drivers, but,

> [i]f the [p]laintiff later learns that there was a third vehicle at fault for the collision, she cannot reopen her case to seek more money from another asserted tortfeasor because her injuries have already been adjudicated to a final judgment and satisfied.

> Here, each Plaintiff claimed injuries from his exposure to asbestos. He sued the parties allegedly responsible and established the nature, extent and cause of his injuries. Those claims either settled or went to judgment and were paid. Once paid, the Plaintiff's claims for damages from his exposure to asbestos were extinguished.

> ※　　　※　　　※

> Each of these Plaintiffs is entitled only to satisfaction of the judgment as entered in his prior trial. That has occurred in these cases, and Plaintiff has no further right to additional damages from the Trust.

The appellants opposed the Trust's motion for summary judgment, and summarized the prior litigation as follows:

> Each of the Plaintiffs in this group received verdict awards against manufacturers and/or suppliers of asbestos-containing products. In each of the cases, the jury found that the Plaintiff's decedent had developed mesothelioma as a result of exposure to asbestos and that one or more defendants in the case were liable as joint tortfeasors for his resulting injuries and death. In each of the cases, the jury awarded damages based upon its assessment of the injuries suffered. In each of the cases, the verdict was reduced to judgment based upon the amount of damages awarded and the number of parties found liable as joint tortfeasors in the case. In each of the cases, the non-settling defendants then either settled and received a joint tortfeasor release or paid the judgment and received for itself a satisfaction of the judgment entered against it.

> Wallace & Gale Corporation ("Wallace & Gale") was not sued in these earlier proceedings, having voluntarily filed in

1984 a Chapter 11 bankruptcy petition that operated, under federal law, as a stay of commencement or continuation of any civil action against it. As a result, none of the plaintiffs in these cases had the ability to sue or proceed against Wallace & Gale, and their cases proceeded to judgment as to those parties against whom plaintiffs could proceed.

The appellants explained that the judgments which had been entered against the various other defendants had not been paid in full, and that they sought to obtain a judgment against the Trust for the joint tortfeasor's share that would have been allocated to W & G had it not been in bankruptcy at the time the prior judgments were entered. The appellants asserted that they were not seeking a "double recovery." Rather, they were attempting to supplement the amounts previously recovered. According to the appellants:

> If the Trust is found liable as a joint tortfeasor, it will pay no more, ultimately, than what Wallace & Gale would have paid as an adjudicated joint tortfeasor in the earlier case in which the judgment was entered. Principles of equity thus heavily favor allowing the continuance of this action, rather than ordering it discontinued.

The circuit court conducted a hearing on the motion. During the hearing, counsel for the appellants acknowledged that there was no known case in which another asbestos plaintiff had done what they were seeking to do in this case. The colloquy between the court and appellants' counsel was as follows:

THE COURT: Now, help me with this.

[APPELLANTS' COUNSEL]: Yes.

THE COURT: Because a lot of these defendants at various times, not these defendants necessarily but defendants in these cases, a lot of them have been variously in bankruptcy at different times, correct?

[APPELLANTS' COUNSEL]: Yes.

THE COURT: In U.S. district courts all over the United States I assume.

[APPELLANTS' COUNSEL]: Yes.

THE COURT: Has anybody else done what you're describing?

[APPELLANTS' COUNSEL]: Your Honor, no, as far as I know.

\* \* \*

THE COURT: ... [W]hat happens if a, say, ... there is a defendant in a civil case, who among a series of defendants, joint tortfeasors who brilliantly manages to avoid service.

[APPELLANTS' COUNSEL]: Right.

THE COURT: And then the case goes to trial and goes to verdict. I mean, that is sort of more like their situation.

[APPELLANTS' COUNSEL]: Well, Well—

THE COURT: They have brilliantly avoided service legally. They didn't hide literally.

[APPELLANTS' COUNSEL]: I understand what Your Honor is saying. However, in that instance, again, we get back to fundamental principles in regard to statute of limitation. You know, a plaintiff has three years to figure it out.

THE COURT: Yes, ordinarily. In an ordinary tort case.

[APPELLANTS' COUNSEL]: He's going to sue whom he can and certainly file [against] who he can. But in an instance where a defendant is unserved for any reason, I would grant the Court that it is unlikely that once the plaintiff goes to judgment and collects his judgment, that the Court of Appeals would find that to be an instance where the plaintiff ought to be able to go after that defendant later.

THE COURT: Are there any cases discussing this?

[APPELLANTS' COUNSEL]: This is just different from this case because we had no opportunity to sue Wallace & Gale who was immanently serviceable until November 16th of 1984.

THE COURT: Are there any cases, appellate cases that are like this, like what I described?

[APPELLANTS' COUNSEL]: Frankly, no.

THE COURT: You don't know of any?

[APPELLANTS' COUNSEL]: No. I've looked. And that's what makes this issue such an interesting one.

After the hearing, the circuit court granted summary judgment in favor of the Trust. In a memorandum opinion, the court explained:

Defendant Wallace & Gale Asbestos Settlement Trust ("The Trust") moves for Summary Judgment against various asbestos Plaintiffs on the grounds that their cases have been tried to final judgment against other defendants, while Wallace & Gale was in bankruptcy. Plaintiffs oppose these Motions claiming they should be permitted to recover additional money for the same injury from the Trust. The history of this matter is undisputed. Wallace & Gale filed bankruptcy in 1984. They remained under the protection of the Bankruptcy Court until 2006. When that Court confirmed their Plan, the Company emerged in the form of the Trust, an entity whose only potential assets were insurance policies that could fund the Trust in order to pay asbestos claims. The cases we deal with here are those that were tried to judgment during the bankruptcy, when Wallace & Gale was protected from suit.

The cases at issue here were all tried to final judgment between 1996 and 2001, and a jury set the value of each individual plaintiff[']s injury. Because of its bankruptcy, Wallace & Gale did not participate in any of these proceedings, and at the time, there was no indication when it might emerge from bankruptcy, if at all. Meanwhile, each jury award was divided amongst various joint tortfeasors by pro-rata shares and reduced accordingly by various pre-trial settlements. After the judgments were divided, the Plaintiffs accepted full payment of the pro-rata shares by some defendants and settled with others for reduced amounts to avoid delays caused by appeals, or for other reasons. The result of these various settlements is that a deficit now exists between the amounts actually received and the

amount of the jury award in each case. The Plaintiffs now seek to proceed against Wallace & Gale for the remainder of the jury awards, claiming that they are entitled to reopen the verdict and re-divide it, this time including Wallace & Gale, and then collect its pro-rata share.

Plaintiffs argue that they still have a viable cause of action against Wallace & Gale since its entry into bankruptcy tolled the statute of limitations and they never surrendered their cause of action. Wallace & Gale, in response, contends that allowing the Plaintiffs to proceed would violate the final judgment rule. Plaintiffs further allege that Wallace & Gale is presumptively liable based on the doctrine of collateral estoppel, and that Wallace & Gale should be subject to an automatic judgment against it. However, because the Plaintiffs' claims against Wallace and Gale are barred by the final judgment rule, this Court need not decide the issue of whether offensive collateral estoppel is appropriate.

The court described the appellants' illustrative numerical examples as "slick mathematics [that] amount to a post-hoc attempt to recapture opportunities previously lost by their own actions." The illustrative examples provided by appellants did not persuade the court that they should be permitted to reopen the litigation to seek more complete payment of the previously-entered judgments. The circuit court observed:

Aside from demonstrating the absurdity of trying to create an imaginary past, when a real one actually existed, these calculations demonstrate the ultimate injustice that results from the attempt. . . .

\*        \*        \*

So, after all the slick numerical manipulations are done, what we have learned is that when a case is tried, or when it is settled, the parties make decisions which by hindsight may appear to be wise, or unwise. Presumably when plaintiffs settled our imaginary case, just like when they settle a real case, they would have taken into account the real number of defendants available from which recovery

was possible and settle the case accordingly. These decisions control whether or not Plaintiffs recover more or less than the amount of damages proven at trial. That is all part of the risk all parties accept when they struggle with the decision of whether or not to settle. It is this Court's view that they should live with the consequences of their well-informed real life decisions as well as the consequences of the risk of trial, rather than attempt to grab for more money based on sophistry and post hoc rationalizations of fact that find little support in the law.

Citing *Bell v. Allstate Ins. Co.,* 265 Md. 727, 729, 291 A.2d 478 (1972), for the proposition that " 'there may be only one satisfaction for a single harm, no matter how many tortfeasors are involved,' " the court concluded that that principle barred the appellants' claims against the Trust, observing: "[I]n the cases at bar, the Plaintiffs all tried their cases, received a jury award, and settled for reduced amounts for their own reasons."

The court summarized its rationale for granting the motion for summary judgment as follows:

The law in Maryland is clear, a plaintiff may only have one recovery for a single harm. The Plaintiffs have attempted to circumvent this rule through several compelling, yet untested theories. Ultimately, the Plaintiffs have asked this Court to do something it simply cannot do, which is turn back the clock and insert a party into an existing and final judgment that was not an actual defendant in the original action. At the conclusion of each trial, each Plaintiff stood in a position to recover the full amount of each judgment. The Plaintiffs, however, made a series of calculated decisions that ultimately reduced the amount recovered under each claim. The Plaintiffs fail to acknowledge that each of these decisions carried certain inherent consequences for which they would ultimately be held responsible. This Court does not believe that it is appropriate to allow the Plaintiffs to revisit and re-divide final judgments as they see fit, without being held accountable for the ramifications of their past decisions.

This appeal followed, and the sole question presented by appellants is: "Did the trial court err in granting summary judgment in favor of the Trust?" For the reasons set forth below, we answer that question in the negative, and affirm the judgment of the Circuit Court for Baltimore City.

## STANDARD OF REVIEW

With respect to motions for summary judgment, Maryland Rule 2–501(f) provides, in pertinent part:

The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

■ This Court has observed that "summary judgment is appropriate only when, after viewing the motion and response in favor of the non-moving party, there is no genuine issue of material fact, and the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Messing v. Bank of America*, 143 Md.App. 1, 10, 792 A.2d 312 (2002); Md. Rule 2–501(e). Once it has been determined that there is no genuine issue of material fact, we review whether or not the circuit court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990). We review the circuit court's legal conclusions *de novo*. *Matthews v. Howell*, 359 Md. 152, 162, 753 A.2d 69 (2000).

## DISCUSSION

Although there appears to be some dispute between the parties about the numbers that would be relevant to damages if the court were to hold the Trust liable for some portion of appellants' claims, there is no genuine dispute as to the material facts pertinent to application of the final judgment rule. Our review of that issue is *de novo*.

■ In this case, the circuit court granted summary judgment based on its interpretation of the final judgment rule, which provides generally that there can be but one recovery by a plaintiff for a given wrong, regardless of the number of tortfeasors or whether the tortfeasors acted independently or jointly. *Bell v. Allstate Ins. Co., supra,* 265 Md. at 729, 291 A.2d 478. The Court of Appeals explained in *Underwood–Gary v. Mathews,* 366 Md. 660, 669, 785 A.2d 708 (2001) (internal citations omitted):

> [A] plaintiff is entitled to but one compensation for his or her loss, and full satisfaction of a plaintiff's claim prevents it from being further pursued. Thus, while multiple tortfeasors may be jointly and severally liable for the same injury, when payment of a judgment in full is made by one tortfeasor, "there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages. . . ." [D]ouble recovery for the same harm is not permissible.

In *Underwood–Gary,* 366 Md. at 670 n. 9, 785 A.2d 708, the Court of Appeals quoted the following language from a comment in the Restatement (Second) of Judgments, § 50 cmt. d (1982):

> [W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforceable claim against any other obligor who is responsible for the same loss.

Appellants contend this rule should not apply to them because the bankruptcy precluded them from including W & G in their original suits. They state in their brief:

> All of the cases cited by the Appellee are consistent in holding that a plaintiff who secures a judgment compensating him for a single wrong cannot thereafter attempt to secure additional damages for the same injury. The value of each of these [appellants'] injuries has been set by a jury verdict, but Wallace and Gale's responsibility for that injury could not be litigated at that time. Wallace and Gale's potential pro rata share of that verdict could not be comput-

ed in the post-trial calculations, which resulted in each [appellant] receiving less under the judgment than each would have received had Wallace and Gale been a party to the case.

But appellee points out that, in the present cases, at a time when W & G was in bankruptcy, the appellants settled with their various judgment debtors by dividing up financial responsibility as if W & G was not a joint tortfeasor. (That is, in cases involving judgments against two asbestos companies, the liability was divided into two—rather than three—pro-rata shares.) Appellee states in its brief:

> After securing jury verdicts, ... Appellants proceeded to maximize their recoveries from the judgment obligors by calculating the final judgment amounts using the lowest number of offsets and not accounting for any possible claims against Wallace & Gale.
>
> As a result, the judgments entered against the non-settling defendants were higher than they otherwise would have been, and Appellants proceeded to collect more from those judgment defendants—either by way of full payment or settlement—than they otherwise would have received had Appellants calculated the judgments to account for a possible future recovery from Wallace & Gale or the Trust. By calculating their final judgments on this basis, securing settlements on this basis, and receiving payments in satisfaction of the judgment liability on this basis, Appellants accepted full satisfaction of the judgments in lieu of any further contributions by any other actual or potential defendants. The final judgments were thus satisfied and discharged.

■ We agree with the appellee that, because of the manner in which appellants treated the judgments and settlements with the judgment obligors of record between 1996 and 2001, appellants are precluded from revising those concluded transactions even though the Trust might now appear as an additional source of contribution among liable tortfeasors. The public interest in finality of judgments and litigation outweighs

the appellants' interest in attempting to belatedly pursue this potential source of additional compensation. *See Andresen v. Andresen*, 317 Md. 380, 387–88, 564 A.2d 399 (1989) (Maryland cases "have rigorously emphasized the finality of judgments"). *Cf.* Maryland Rule 2–535, limiting revisory power over judgments. In our view, the policy reasons which provide the underpinnings of the final judgment rule support applying that rule to bar the present claims of the appellants.

Appellants argue that their cases are factually distinguishable from other cases which have applied the final judgment rule to bar subsequent litigation seeking damages arising out of a single tort; the distinction here, appellants contend, is that the amounts of their jury verdicts were not paid in full because some of the judgments were settled for less than 100 cents on the dollar. But we are not persuaded this is a fact which compels reviving the litigation of these asbestos cases.

It appears that, in the Jakubowski case, full payment of the entire judgment amount was made by two tortfeasors. Jakubowski received full payment on the judgment, plus interest, and gave the paying tortfeasors satisfactions of judgment in return.

In the cases in which Brannan, Nardone, and McFadden prevailed, appellants chose to accept less than the judgment amounts in full settlement of their claims.[4] Although it is clear that W & G was in bankruptcy at the time judgments were entered in the appellants' respective cases, the fact remains that the appellants in each case negotiated with the tortfeasors who were then parties to the litigation amounts which the appellants accepted as payment in full of the liability for their claims based upon asbestos exposure. As noted above, appellants recited this fact in their opposition to the motion for summary judgment, stating:

---

**4.** The Trust also asserts in its brief that the judgments entered in the Brannan and McFadden cases expired twelve years after entry, and that this case is moot as to those two parties. This contention was not raised in the circuit court, and in view of our disposition of the case, is not a question we must decide.

In each of the cases, the verdict was reduced to judgment based upon the amount of damages awarded and the number of parties found liable as joint tortfeasors in the case. **In each of the cases, the non-settling defendants then either settled and received a joint tortfeasor release or paid the judgment and received for itself a satisfaction of the judgment entered against it.**

(Emphasis added.)

Because of such settlements and payments, had it not been for the unexpected emergence of the Trust from the W & G bankruptcy, all four appellants' claims would now be deemed fully and finally resolved by the final judgments entered in the four cases. In our view, the emergence of the Trust from bankruptcy does not take these cases outside the rule applicable generally to cases in which a judgment has been paid in full. *See Underwood–Gary, supra,* 366 Md. at 670, 785 A.2d 708.

Under such circumstances, the circuit court correctly ruled that the final judgment rule precludes further litigation seeking further compensation for the same injuries from further defendants. The circuit court did not err in granting the appellee's motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**