*Diana Oxley, et al. v. Frederick Memorial Hospital, et al.*, No. 1335, September Term, 2024.

Opinion by Zic, J.

**MEDICAL MALPRACTICE — ONE SATISFACTION RULE — APPLICATION TO SETTLEMENT FOR LATER-IN-TIME INJURY**
The circuit court erred in granting summary judgment based on the one satisfaction rule because the plaintiff's settlement of a motor vehicle negligence claim arising nearly four years after the alleged medical malpractice did not constitute a full satisfaction of all injuries claimed in the medical malpractice action.

**ONE SATISFACTION RULE — TEMPORAL LIMITATION OF RELEASE — INJURIES SUSTAINED BEFORE RESOLVED CLAIM'S SUBJECT INCIDENT**
A release limited to injuries "resulting from or related to" a motor vehicle accident occurring after the alleged medical malpractice cannot be construed to bar claims for injuries sustained prior to that accident.

**ONE SATISFACTION RULE — REQUIREMENT TO COMPARE INJURIES ACROSS CLAIMS**
Proper application of the one satisfaction rule requires the court to study and compare all injuries from both the settled claim and the unresolved claim. The circuit court erred by considering only the medical records following the motor vehicle accident. Correct application necessitated examination and comparison of medical records spanning from the date of the alleged malpractice through the date of the motor vehicle accident.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1335

September Term, 2024

_____

DIANA OXLEY, ET AL.

v.

FREDERICK MEMORIAL HOSPITAL, ET
AL.

_____

Reed,
Zic,
Harrell, Glenn T., Jr.
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zic, J.

_____

Filed: February 2, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from the Circuit Court for Frederick County's grant of summary judgment in favor of appellees, Frederick Memorial Hospital ("Hospital"), Paul Hess, CRNP, and Michael R. DiNapoli, M.D. (collectively, "Appellees"), in a medical malpractice action brought by Diana and Dennis Oxley (collectively, "Oxleys"). The circuit court determined that the Oxleys' claims were barred by the "one satisfaction rule" based on Mrs. Oxley's settlement of a separate motor vehicle negligence claim involving a motor vehicle accident that occurred nearly four years after the alleged medical malpractice. The Oxleys present three questions,[1] which we have recast and rephrased as one: Whether the circuit court erred in granting summary judgment on the grounds of the one satisfaction rule. For the following reasons, we reverse and remand for further proceedings not inconsistent with this opinion.

---

[1] The Oxleys phrased the questions as follows:

    I.    Did the [c]ircuit [c]ourt of Frederick County properly apply the One Satisfaction Rule to [d]ismiss this matter where [Mrs. Oxley] executed a general release to a subsequent tortfeasor for a separate incident occurring nearly [four] years after the [Appellees'] alleged [m]alpractice[?]

    II.    Can the [c]ourt [d]ismiss a case where expert testimony is required to determine a complicated medical issue as to "one particular harm" where two unrelated incidents years apart are argued that they result in the single particular harm?

    III.    Is a [p]laintiff required to apportion damages in a case where [p]laintiff claims to be completely healed from a second injury but permanently disabled from the original medical malpractice?

**BACKGROUND**

*Mrs. Oxley's Medical History*

The relevant facts are largely undisputed. Mrs. Diana Oxley has an extensive and complex medical history. In 2009, she reported chronic myalgias and extreme fatigue affecting her shoulders, wrists, neck, thoracic area, hips, knees, and ankles. She was diagnosed with osteoporosis and degenerative spine disease.

On May 7, 2012, Mrs. Oxley suffered a traumatic brain injury ("TBI") when she fell down a flight of stairs, resulting in massive intracranial bleeding that left her cognitively and physically disabled. Following her TBI, Mrs. Oxley suffered from vision problems, balance disturbances, and diminished strength. She required assistance with virtually all activities of daily living, was unable to walk without assistance, dress, or use the bathroom independently, and was found to be "disabled" by the Social Security Administration.

In July 2015, Mrs. Oxley was transported by ambulance to a hospital with complaints of "lower body weakness and the inability to walk." In March 2017, she was hospitalized for seizures. During this admission, nursing and physical therapy notes documented pre-existing mild leg weakness, "extreme gait imbalance," and "unsteady gait/poor balance" that were "premorbid from old head injury."

On April 5, 2017, a neurologist noted that Mrs. Oxley had "episodes of incontinence in the past" and ongoing gait disturbances and recommended placing a cerebral spinal fluid shunt given her history of TBI. Mrs. Oxley declined the shunt placement and elected to continue with regular observation.

2

Approximately three months later, on July 15, 2017, Mrs. Oxley visited Jefferson Medical Center's emergency department, complaining of a history of low back pain, which had worsened "after bending over to bite a callus off her foot."

### The July 19, 2017 Alleged Medical Malpractice

On July 19, 2017, Mrs. Oxley visited the Hospital's emergency department with complaints of ongoing and worsening low back pain. She denied any recent falls and denied incontinence. On examination, Mrs. Oxley had normal strength in her lower extremities. She was diagnosed with nontraumatic back pain and, after a few hours, she improved in the emergency department and was released to receive physical therapy at home.

On July 31, 2017, a physician saw Mrs. Oxley following complaints of back pain and urinary incontinence. An MRI performed on August 1, 2017, revealed a "severe compression deformity" and "stenosis and disc protrusion" in her lumbar spine. Mrs. Oxley visited a spine surgeon on August 4, 2017, who prescribed to her a back brace that she "refuse[d] to wear," and scheduled her for spine repair surgery to be conducted ten days later. Before the surgery could take place, however, Mrs. Oxley was discharged from the surgeon's practice after her sister made phone calls using "unacceptable foul language and yelled and screamed" at the office staff, as well as left negative reviews online "about [the] office and staff."

On August 19, 2017, Mrs. Oxley was evaluated at Meritus Medical Center's emergency department for onset of generalized weakness, and told staff that "she ha[d] been falling several times a day due to her weakness." The following day, she

3

"requir[ed] 'immediate medical intervention as a result of severe, life threatening, or potentially disabling conditions[,]'" and resultantly was transferred to Johns Hopkins Medicine's emergency department, where she was admitted as a patient.

Mrs. Oxley subsequently underwent spinal surgery on August 23, 2017. While recovering after the surgery in her hospital room, Mrs. Oxley fell when she attempted to move to the bathroom. Her right hip was fractured as a result of this fall, and corrective surgery was performed the following day.

The Oxleys filed a complaint on April 2, 2019, alleging medical malpractice by Appellees during Mrs. Oxley's July 19, 2017 emergency department visit. The Oxleys' complaint contended that Appellees' negligent failure to diagnose and order proper diagnostic testing, and negligent recommendation that Mrs. Oxley perform "light stretching and physical activity[,]" contributed to Mrs. Oxley's development of cauda equina syndrome, conus medullaris syndrome,[2] and permanent damages, including bowel

---

[2] The cauda equina is "the collection of nerves at the end of the spinal cord" that "provide motor and sensory function to the legs and the bladder[.]" AM. ASS'N OF NEUROLOGICAL SURGEONS, *Cauda Equina Syndrome*, [https://perma.cc/2B39-5NV5]. Cauda equina syndrome results from "dysfunction of multiple lumbar and sacral nerve roots of the cauda equina." *Id.* "The conus medullaris is the terminal end of the spinal cord, which typically occurs at the L1 vertebral level in the average adult." Loana S. Rider and Erin M. Marra, *Cauda Equina and Conus Medullaris Syndromes*, STATPEARLS PUBLISHING (Aug. 7, 2023), [https://perma.cc/2B9M-BGBX]. Conus medullaris syndrome results from "compressive damage to the spinal cord." *Id.* "Both syndromes are neurosurgical emergencies as they can present with back pain radiating to the legs, motor and sensory dysfunction of the lower extremities, bladder and/or bowel dysfunction, sexual dysfunction[,] and saddle anesthesia." *Id.*

and bladder incontinence, severe back and leg pain, numbness, and weakness.[3]  The complaint listed the damages as follows:

> significant damage and harm, past, present, and future, including, but not limited to, the following:  severe and permanent[] pain, suffering, [and] mental anguish; loss of the ability to enjoy life; annoyance and inconvenience; diminished ability to pursue and enjoy [everyday] activities of life, loss of consortium; and other damages as may be revealed.

The trial was originally scheduled for November 30, 2020, but was delayed due to the COVID-19 pandemic.  A new trial date was set for October 11, 2022, but this date was continued after the Oxleys' lead medical expert retired.  A trial was ultimately scheduled for May 20, 2024.

### The May 2021 Motor Vehicle Accident and November 2023 Settlement

While awaiting the rescheduled medical negligence trial, on May 1, 2021,—nearly four years after the alleged medical malpractice—Mrs. Oxley was involved in a motor vehicle accident resulting in multiple injuries, including a left hip fracture.  Mrs. Oxley's left hip was surgically repaired on May 2, 2021, and her medical records noted severe pain and "impaired mobility, ambulation[,] and activities of daily living secondary to left hip fracture[.]"

---

[3] The Oxleys' complaint also included a loss of consortium claim, contending that the alleged medical negligence caused Mr. Dennis Oxley to "suffer[] a loss of companionship[] [and] services," and forced him "to [forgo] other opportunities in his life, including employment, to care for Mrs. Oxley with her disabilities."

On November 17, 2022, Mrs. Oxley filed a complaint in the Circuit Court for Allegany County against her own insurance company and the underinsured driver of the other vehicle involved for damages arising from the May 1, 2021 accident. The complaint alleged "serious, painful[,] and permanent injuries in and about [Mrs. Oxley's] head, neck, back, shoulders, chest, arms, leg, limbs and other parts of her body[,]" and stated that she "will be required to contend with these injuries, many of which are permanent in nature and will hamper and deprive her of her enjoyment of life[.]"

During discovery in the motor vehicle negligence case, Mrs. Oxley submitted medical records from healthcare providers, which noted "chronic pain[] involving the left hip, right hip, and lumbar spine[,]" and that the "[o]nset of symptoms resulted from being involved in a motor vehicle accident on 05/01/2021[.] . . . Symptoms have been present for years." The records noted "difficulty getting up from a chair, difficulty standing, difficulty walking, difficulty with [activities of daily living], functional limitations, inability to perform [activities of daily living], and requiring constant assistance." These records also noted changes in bladder function, leg numbness, and depression.

On November 6, 2023, Mrs. Oxley settled the motor vehicle negligence case for $100,000 by executing a "Full and Final Release of All Claims" ("Release"). The Release stated that it fully released Mrs. Oxley's insurance company, the driver involved,

> and any and all persons, firms and/or corporations ("the releasees") for any and all causes of action, judgments, claims or demands for damages, costs, expenses, attorneys' fees, . . . consequential damages or any other loss whatsoever in any way resulting from or related to the claims *arising out of the*

6

> *accident that occurred on or about May 1, 2021*[,] which is the subject matter of the suit entitled *Diana Marie Oxley v. State Farm Mutual Automobile Insurance Company, et al.* pending in the Circuit Court for Allegany County[.]

(First emphasis added.)

The Release further stated that it was "intended to cover all actions, causes of action, claims and demands for, upon or by reason of any damage, loss or injury which might appear at any time in the future, no matter how remotely they may be related to the aforesaid accident." The Release did not mention or carve out exceptions for Mrs. Oxley's then-pending medical negligence suit or any other injuries predating the May 1, 2021 motor vehicle accident.

The Oxleys did not disclose the motor vehicle negligence proceedings or the Release to either their own trial counsel in the medical negligence case or to Appellees. Before this Court, Appellate counsel for the Oxleys asserts that "neither party was able to obtain a copy of the . . . [Release] signed by [Mrs. Oxley.]" Instead, Appellees' and the Oxleys' respective counsel in the medical negligence case learned the details of the Release "at the very end of the . . . discovery period" for the rescheduled May 2024 trial, after the Oxleys' motor vehicle negligence attorneys were subpoenaed.

### The Circuit Court's Ruling

The circuit court continued the medical negligence trial and ordered the parties to brief possible grounds for summary judgment following the parties' revelation of the Release. Appellees moved for summary judgment on multiple grounds, including the one satisfaction rule.

7

After reviewing the record and hearing argument, the circuit court granted summary judgment in favor of Appellees.  The court limited its ruling based on the one satisfaction rule.[4]  In its written opinion and order, the court reasoned that "it is not dispositive that the motor vehicle accident occurred after the alleged malpractice in the instant case[,]" because "[t]he satisfaction occurred prior to the resolution of any claims here."  The court proceeded to conduct a review of the record, beginning with the motor vehicle negligence litigation.  It noted that the Oxleys' complaint in that suit alleged "serious, painful and permanent injuries in and about [Mrs. Oxley's] head, neck, back, shoulders, chest, arms, legs, limbs and other parts of her body."

The court then turned to medical documentation[5] submitted in the medical negligence case that was "created" after May 1, 2021, but before the motor vehicle negligence settlement.  The court identified the following symptoms from this sample of the medical records:  bilateral lower extremity weakness; bladder catheter with evidence of no infection; chronic pain syndrome impacting "the lower back, bilateral hips, [and] bilateral buttocks"; left hip fracture; lower back pain; and denial of bowel or bladder dysfunction.

---

[4] Appellees characterize the circuit court's grant of summary judgment as one based on both "the issue of the general release and the one satisfaction rule."  The court, however, explicitly stated that its grant of summary judgment was based on the one satisfaction rule.

[5] These documents reflected medical visits on the following dates:  May 1, 2021; May 21, 2021; October 12, 2021; October 13, 2021; October 24, 2021; and November 16, 2021.

8

Ultimately, the court found it "difficult to distinguish the injuries, complaints and symptoms set forth in the various medical records, to include symptoms and injuries related to the alleged malpractice here, and those related to the motor vehicle accident."

Next, the circuit court analyzed "whether the damages may be apportioned." Finding that neither of the Oxleys' expert witnesses could provide a numerical apportionment for causation of the injuries, the court held that "[t]here would be no possibility that the jury could reasonably apportion damages without expert testimony[,]" and so, "[t]he damages[ ] are indivisible." The court ultimately concluded that the one satisfaction rule applied because the *permanent* damages were not apportionable, and, accordingly, granted summary judgment.

This timely appeal followed.

**STANDARD OF REVIEW**

Summary judgment is proper when "there is no genuine dispute as to any material fact and [] the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). Maryland appellate courts "review [a] circuit court's grant of summary judgment *de novo*." *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Aiken*, 483 Md. 590, 616 (2023) (internal quotation marks and citation omitted). "In reviewing a grant of summary judgment, we independently review the record in the light most favorable to the nonmoving party and construe reasonable inferences against the moving party." *Wadsworth v. Sharma*, 479 Md. 606, 616 (2022) (citation omitted). "We do not endeavor to resolve factual disputes, but merely determine whether they exist and

are sufficiently material to be tried." *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 297 (2022) (citation omitted).

Moreover, it is a "well-established 'general rule that in appeals from the granting of a motion for summary judgment, absent exceptional circumstances, Maryland appellate courts will only consider the grounds upon which the circuit court granted summary judgment.'" *Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 257 Md. App. 1, 34 (2023) (quoting *Irwin Industrial Tool Co. v. Pifer*, 478 Md. 645, 682 (2022)) (cleaned up).

## DISCUSSION

### I. THE CIRCUIT COURT ERRED IN APPLYING THE ONE SATISFACTION RULE.

#### A. Parties' Contentions

Citing to *Gallagher v. Mercy Med. Ctr., Inc.*, 463 Md. 615 (2019), the Oxleys argue that the one satisfaction rule does not apply to the underlying medical negligence case "because the satisfaction of the May 1, 2021[] automobile accident did not encompass any of the injuries sustained by [Mrs.] Oxley from her July 19, 2017 medical malpractice—malpractice which predated her subsequent auto accident by almost four years." The Oxleys further contend that the circuit court erred by not reviewing the evidence in the light most favorable to them as the non-moving party, including consideration of whether Mrs. Oxley's remaining injuries and disabilities resulted solely from the medical negligence.

Additionally, the Oxleys argue that the injuries present a "complicated medical question" for which the trial court would have required expert medical testimony to grant summary judgment on the one satisfaction rule. In the alternative, the Oxleys contend that, should this Court conclude that the Release applies[6] and that the injuries are "one and the same," they "should still be able to recover damages for medical damages and pain and suffering for the nearly [four] years in between the torts."

Appellees contend that the circuit court properly granted summary judgment on the one satisfaction rule because the court "properly determined after the close of discovery in [the medical negligence] case that the injuries and resultant damages claimed by [Mrs. Oxley] in her [motor vehicle negligence] case . . . were indivisible and incapable of apportionment from those claimed in her medical malpractice case." Appellees argue that Mrs. Oxley's submission of three common medical documents in both cases indicates that she claimed the same damages in the motor vehicle negligence case as in the medical negligence case.

Notably, at oral argument before this Court, counsel arguing on behalf of Appellees conceded that the injuries sustained prior to the 2021 motor vehicle accident

---

[6] In their brief, the Oxleys state in passing that the "[R]elease is not admissible []or relevant to the pending claims of medical negligence." Parties' appellate briefs must contain "[a]rgument in support of the party's position on each issue." Md. Rule 8-504(a)(6). "A single sentence is insufficient to satisfy [this] requirement." *Silver v. Greater Balt. Med. Ctr.*, 248 Md. App. 666, 688 n.5 (2020). This Court cannot be expected to seek out law or facts in favor of either party. *Rollins v. Cap. Plaza Assocs., L.P.*, 181 Md. App. 188, 201-02 (2008). Accordingly, we will not reach this issue.

would not be considered the "same injury" for purposes of the one satisfaction rule. The exchange occurred as follows:

> **[Appellate Court of Maryland]:** How do you apply the one satisfaction rule . . . assuming that there is an injury from the medical negligence case, how do you apply the one satisfaction rule from that injury to the time of the motor vehicle accident? Why isn't that completely separate?
>
> **[Counsel arguing on behalf of Appellees]:** So, right to the point. I would agree with Your Honor that it is not applicable, and to that extent, I would amend Appellees' brief to say [that] the correct thing to do here is to affirm in part and to reverse in part. Because I think what the Court is asking me is how can we possibly look at the one satisfaction rule, which is meant to prevent claims for the same injuries, retrospectively to claims for injuries which preceded it in existence in time. Well, I just can't figure out a way using common sense to do that.
>
> ***
>
> And just using common sense and logic, I can't sit here and argue to you that this Release . . . covers the time period between the medical malpractice—which is actually July 19, 2017—up until the time that was released. I would have to sit here and be honest that, that would be fair game.

Counsel stated that he "would amend" Appellees' request for relief, asking this Court to "affirm in part, and state [that] the one satisfaction rule bars all of these claims from the time of the . . . [motor vehicle] accident, May 1, 2021, forward, because that's what the Release says, that's what the Release does."[7]

---

[7] We are unpersuaded by Appellees' alternative argument and request for relief. Appellees pointed to no case law in which a court has applied the one satisfaction rule to strike only a portion of a party's complained injuries from future litigation. This Court cannot be expected to seek out law or facts in favor of either party. *Rollins*, 181 Md. App. at 201-02.

Moreover, Appellees argue that this case presents a "complicated medical question" that requires "qualified expert medical testimony" to determine whether the "injuries arising out of [the motor vehicle accident]" are divisible from those arising out of the alleged medical negligence. They further contend that the Release contemplated the medical negligence case because "[i]t contained no joint tortfeasor provision, nor . . . any provision that separated out consideration of the injuries claimed in [the medical negligence] case."

**B.     Legal Framework**

We begin with an overview of the one satisfaction rule, which mandates that "there can be but one satisfaction for the same injury[.]" *Kyte v. McMillion*, 256 Md. 85, 94-95 (1969) (quoting *Trieschman v. Eaton*, 224 Md. 111, 115 (1961)). For the one satisfaction rule to apply, "the [unresolved] negligence . . . must 'flow legitimately as a natural and probable consequence of the [satisfied] injury[.]'" *Browne v. State Farm Mut. Auto. Ins. Co.*, 258 Md. App. 452, 488 (2023) (citing *Kyte*, 256 Md. at 103 (citations omitted)).

To determine whether the one satisfaction rule applies to a given case, "we necessarily begin by identifying what constituted [the plaintiff's] alleged 'satisfaction.'" *Gallagher*, 463 Md. at 630. The Supreme Court of Maryland has "defined a 'satisfaction' as 'an acceptance of full compensation for an injury.'" *Id.* at 627 (quoting *Morgan v. Cohen*, 309 Md. 304, 312 (1987)). "Under the one satisfaction rule, once the plaintiff has obtained a full satisfaction, he or she is prevented from pursuing another

who may be liable for the same damages." *Id.* (citing *Underwood-Gary v. Mathews*, 366 Md. 660, 667 (2001)).

Next, "[h]aving determined that the [] settlement was a satisfaction, we must determine whether it constituted a *full* satisfaction of all of [the plaintiff's] injuries, such that the one satisfaction rule precludes [the plaintiff's] claims against [the defendant]." *Id.* at 632 (emphasis added). This step requires the court to "'study and compar[e]' the injuries for which the plaintiff received recovery in his or her [first-resolved] action, and the injuries for which the plaintiff seeks recovery in his or her [unresolved] action." *Id.* at 627 (quoting *Underwood-Gary*, 366 Md. at 673 (quotation omitted)) (internal marks omitted) (second and third alterations added). "[P]ertinent portions of the record[,] . . . includ[ing] [] answers to interrogatories, the pretrial order, the testimony, the charge of the court and the opening and closing statements of counsel" should all be reviewed by the court in its examination. *Id.* (citation omitted) (first and third alterations added). Put differently, the court must ask whether "the satisfaction from the [first-resolved] action encompass[ed] *all of the injuries sustained by* [*the plaintiff*], including those injuries, in the subsequent proceeding, alleged to be attributable to [the negligence in the second, unresolved action.]" *Id.* at 628 (citations omitted) (emphasis added).

"If the satisfaction only compensated the plaintiff for the injuries he or she [] sustained from the [first-resolved action], the plaintiff's claim for injuries that resulted from the [unresolved action] is not barred." *Id.* (citations omitted). "If, however, the satisfaction compensated the plaintiff for *all of the injuries he or she sustained from* [*both*

14

*incidents*], the plaintiff's [unresolved] claim is barred by the one satisfaction rule." *Id.* (citations omitted) (emphasis added).

"The question of whether full satisfaction has been obtained is one of fact." *Id.* (citation omitted). "In the appropriate case, . . . the issue may be properly decided by the trial court on a motion for summary judgment." *Id.* (citation omitted). It is appropriate for a trial court to grant a motion for summary judgment based on the one satisfaction rule, even absent a full trial on the merits in the settled case, when "there [is] sufficient information before the trial court to compare the injuries that were satisfied by [a] [] settlement [agreement] with the injuries that [the plaintiff] claimed in the [unresolved action.]" *Id.* at 631 (citing *Underwood-Gary*, 366 Md. at 673-74).

## C. Analysis

Viewing the evidence in the light most favorable to the Oxleys, we hold that the circuit court erred in applying the one satisfaction rule to the underlying medical malpractice action.

The alleged "satisfaction" here is the $100,000 payment that Mrs. Oxley accepted in the motor vehicle negligence case. *See Gallagher*, 463 Md. at 630 ("[W]e necessarily begin by identifying what constituted [the] alleged 'satisfaction.'"). Whether this payment constituted a "full" satisfaction of all injuries claimed by the Oxleys in the unresolved medical malpractice action is a more complicated inquiry. The Release's language was expressly limited to injuries "in any way resulting from or related to the claims arising out of the [motor vehicle] accident that occurred on or about May 1, 2021[.]" The alleged medical malpractice occurred on July 19, 2017—nearly four years

15

*before* the motor vehicle accident. Given the Release's temporal limitation, we do not see how a plaintiff's general settlement of claims "resulting from" or "arising out of" a 2021 accident makes that plaintiff whole for claims arising from a 2017 incident.

Based on our review of the record, the circuit court did not consider whether the Release compensated for injuries arising before the May 1, 2021 motor vehicle accident. A complete application of the one satisfaction rule required the court to "study and compare" not just the medical records after the vehicle accident, but also those from July 19, 2017—which is the alleged malpractice date—through May 1, 2021.

To hold otherwise would create an absurd result: a plaintiff who settles a later-occurring accident claim would inadvertently release all prior tort claims, regardless of whether those claims involved different defendants, different incidents, different injuries, or different time periods. Such a construction would effectively punish plaintiffs for settling subsequent, unrelated claims and would create a windfall for earlier tortfeasors whose alleged misconduct predated the settled claim.

The present case is distinguishable from *Gallagher*, upon which the circuit court here relied to grant summary judgment. In *Gallagher*, the plaintiff was injured in a January 2009 motor vehicle accident. 463 Md. at 620. The plaintiff later underwent two reconstructive breast surgeries at Mercy Medical Center in April 2011, and October 2012, respectively. *Id.* at 620. During treatment for an infection caused by those surgeries, a physician negligently inserted a PICC line, puncturing her brachial artery. *Id.* at 620. The plaintiff later underwent vascular surgery to repair her brachial artery and received

16

additional out-patient treatment at Mercy Medical Center for pain in her left arm. *Id.* at 620-21.

Critically, the plaintiff in *Gallagher* specifically sought recovery against her uninsured/underinsured motorists carrier for the *Mercy Medical Center medical procedures and resulting injuries*, including: "her first breast surgery, pain and suffering, [] related bills[,] . . . her second breast surgery, [infection] treatment, PICC line procedure, vascular surgery, and other treatment following the [alleged medical malpractice]." *Id.* at 622. Thus, in *Gallagher*, the plaintiff claimed and recovered for the later-occurring medical malpractice injuries within the scope of her first-resolved motor vehicle negligence case. The Court concluded that there was a full satisfaction because "Ms. Gallagher sought to recover from [the insurance company] for all of her injuries, including those resulting from the PICC [line] procedure." *Id.* at 625, 632-33 (first alteration added).

Here, by contrast, Mrs. Oxley could not possibly have sought to recover, in her November 2022 motor vehicle negligence case, for injuries she sustained in July 2017—nearly four years *before* the accident underlying the motor vehicle negligence case occurred. The temporal sequence is reversed as compared to *Gallagher*; here, the alleged malpractice predated the motor vehicle accident.[8] Some of the damages arising

---

[8] Before the circuit court, counsel for the Hospital acknowledged the temporal nexus between injury and damages arising out of the injury.

> THE COURT: Okay. Injuries, to use that term it's sort of analogous with damages. Would you say?

(continued)

out of Appellees' alleged medical malpractice include medical costs from the 2017 spinal repair surgery and the 2017 right hip repair surgery.[9] The Oxleys explicitly contemplated these damages, i.e., "medical expenses," in the medical negligence complaint. No reasonable interpretation of the motor vehicle negligence Release could encompass injuries that were fully sustained and manifested years before the accident that was the subject of that settlement. Moreover, Appellees acknowledge that the Oxleys claimed damages for "incontinence issues" in the medical negligence case, which were present

---

\*\*\*

[COUNSEL FOR HOSPITAL]:  I kind of disagree with you, Your Honor.

THE COURT:  Okay.  So tell me why.

[COUNSEL FOR HOSPITAL]:  Damages [] flow from injuries.

THE COURT:  Uh-huh.

[COUNSEL FOR HOSPITAL]:  But I think what *Gallagher* is talking about is that the injuries . . . you cannot claim twice for the same injuries.

THE COURT:  I gotcha.  Okay.

[COUNSEL FOR HOSPITAL]:  And in this instance, I know that in the *Gallagher* case, the claim that was settled was the one that in time --

THE COURT:  I gotcha.  Okay.

[COUNSEL FOR HOSPITAL]:  -- the injuries came before.

[9] Appellees contend that the Oxleys did not explicitly claim in the medical negligence complaint that the right hip fracture was a damage caused by the alleged medical negligence.  The record does not support this argument.  Along with "permanent spinal damage which has caused a loss of bladder and bowel control[,]" the Oxleys' medical negligence complaint explicitly noted resultant "medical expenses," "extensive surgery, [and] an extended hospital stay."

18

prior to the alleged medical negligence and were not claimed in the motor vehicle negligence case.

As the Supreme Court of Maryland has recognized, and as Appellees correctly note, the one satisfaction rule applies even when the satisfaction is fulfilled by "a paying party who has 'no connection with the tort at all.'" *Gallagher*, 463 Md. at 626 (quoting *Morgan*, 309 Md. at 312). But this broad principle must be read in context: it refers to situations where the paying party, though unconnected to the tort, is paying to satisfy claims arising from *that particular tort*. It does not mean that settling *any* claim releases *all* claims, regardless of temporal sequence or causal connection.

The motor vehicle negligence Release was temporally limited to injuries arising from the May 1, 2021 accident; therefore, it could not have encompassed, and did not satisfy, claims for *all* injuries arising from the alleged malpractice in July 2017. Because the motor vehicle negligence Release did not represent a full satisfaction of the Oxleys' medical negligence claims, we hold that the one satisfaction rule does not bar the medical negligence action from proceeding.[10]

Because we conclude that the circuit court otherwise erred in applying the one satisfaction rule, we do not reach the alternative arguments concerning "complicated

---

[10] Our ruling is limited to the grounds on which the circuit court granted summary judgment—the one satisfaction rule. *Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 257 Md. App. 1, 34 (2023) ("Appellate review of the circuit court's grant of summary judgment 'is limited ordinarily to the legal grounds relied upon explicitly in its disposition.'") (quoting *Irwin Industrial Tool Co. v. Pifer*, 478 Md. 645, 682 (2022) (quotation omitted)). We express no opinion on the merit of the medical negligence case nor the other grounds contained in the parties' respective motions for summary judgment.

19

medical questions," such as whether summary judgment was improperly granted because expert medical testimony was "required" to provide the court with a sufficient basis upon which to decide whether the one satisfaction rule applied.

## CONCLUSION

The circuit court incorrectly concluded that the one satisfaction rule bars the medical malpractice claims. Accordingly, we reverse the circuit court's grant of summary judgment on the one satisfaction rule and remand for further proceedings not inconsistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**